In the Matter of ANTHONY L. "CC"*, Alleged to be a Permanently Neglected Child. KATHY "CC"*, Appellant. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.

Third Department, July 2, 1975

*·Fictitious names used for publication.

*Francis A. Woidzik* for appellant.

*Stillman & Griset (Philip Stillman* of counsel), for Joseph E. Capra, Sr., and another.

*Mary M. Coffin, Law Guardian,* for infant.

*Raymond F. Loucks (Edmund Nagorka* of counsel), for respondent.

HERLIHY, P. J. The appellant herein contends, among other things, that the finding of the trial court that the evidence established permanent neglect as required by sections 611 and 614 of the Family Court Act is against the weight of the evidence.

Article 6 of the Family Court Act (all references hereinafter to the statutes are to the Family Court Act) deals with infants who are permanently neglected (cf. article 10 of the Family Court Act as to initial jurisdiction of the Family Court in regard to neglected children). Section 611 is derived from chapter 450 of the Laws of 1959 which amended the Children's Court Act. It is evident from the memorandum of then Governor Rockefeller in regard to his approval of chapters 448

through 450 of the Laws of 1959 that the purpose was to make such children adoptable without the consent of the parent and thus to save the public the expense of maintaining such children in institutions or foster homes and also to provide a child with normal family relationships.[1]

Section 611 defines a permanently neglected child as one "who has been placed in the care of an authorized agency, either in an institution or in a foster home, and whose parent or custodian has failed for a period of more than one year following the placement or commitment of such child in the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the moral and temporal welfare of the child."

Paragraph (d) of subdivision 1 of section 614 requires that the petition to terminate the parents' custody upon the ground of permanent neglect must allege that: "the parent or custodian, notwithstanding the agency's efforts, has failed for a period of more than one year following the placement or commitment of such child in the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so".

The infant herein was born out of wedlock on June 2, 1968 at which time his mother was 17 years of age. The mother became a heroin addict in the winter of 1969; on June 10, 1970 the infant came into the care of the Schenectady County

---

1. The purpose of these bills is to provide procedures with adequate safeguards to permit the adoption of a permanently neglected child, without the consent of his parents or parent.

Under existing law a great many children are doomed to grow up in institutions or foster homes at public expense and are prevented from forming normal, lasting family relationships, because minimal contacts between a parent and a child who remains in an institution or foster home act as a bar against a judicial finding that the child has been abandoned. Such a finding is necessary in order to permit the adoption of the child without parental consent and it cannot be made even where the contacts between parent and child are so infrequent and superficial as to be completely meaningless.

These bills act to remedy this situation and at the same time protect the rights of a parent who has a real interest in his or her child, but due to financial or other circumstances is unable to have the care and custody of the child. (NY Legis Ann, 1959, pp 415–416.)

Department of Social Services (hereinafter referred to as Agency) and has since remained in the care of that Agency; from June, 1970 the mother has been incarcerated for most of the time for criminal activities related to her drug addiction or the addiction itself. In July of 1972 the mother overcame her addiction but her incarceration was continuing as of the time of these proceedings.

The mother has had various periods of time from June of 1970 when she was either on furlough, parole or not yet convicted; however, these were not lengthy. Nevertheless, as admitted by her in these proceedings, she has only had face to face visitations with her son on three occasions and her free periods would have permitted far more contacts. The record establishes that she has not kept regular contact with her child or the Agency. Furthermore, the record establishes that she never actually formulated or seriously contemplated any plans for the future of her infant although the Agency, whenever it was able to locate her, made diligent efforts to encourage and strengthen the parental relationship. The record is convincing that the mother was more interested in her selfish desires than in the infant and that the Agency gave her as much encouragement to enter into a continuing parental relationship as her way of life permitted. The facts in this record overwhelmingly establish that the mother's conduct toward her child met the definition of a permanently neglected child and that the Agency carried out its responsibility as required by section 611.

The troublesome part of the statute as to the present facts is the ability of the parent, physically and financially, to provide for the child. The record does not establish affirmatively that the mother was physically or financially able to so provide, but that such failure was the direct result of her own transgressions and while the statute speaks affirmatively, the purpose thereof should not be defeated by negative action and considering the facts in this proceeding, the intent and purpose of the statute has been satisfied.

There has been to date various interpretations of article 6 of the Family Court Act by the courts (see *Matter of Klug,* 32 AD2d 915; *Matter of Barbara P.,* 71 Misc 2d 965; *Matter of Jennifer S.,* 69 Misc 2d 942–951; *Matter of Stephen B.,* 60 Misc 2d 662; *Matter of Jones,* 59 Misc 2d 69).

This court recently stated that the statute should be construed in favor of the mother because of the human relation-

ship and which we herein reaffirm *(Matter of Peter "DD" v St. Lawrence County Dept. of Social Servs.,* 48 AD2d 956). However, on this record we can only conclude that the child was permanently neglected. There is evidence in the record that the mother wanted the child and that she was rehabilitated. Nevertheless, the record shows that between the date of the decision finding the child permanently neglected and the date of the disposition hearing, she was arrested. Of course, we do not pass upon the merits of such arrest.

It is further contended that sections 611, 614 and 622 of article 6 of the Family Court Act are unconstitutional because there is a failure to define the conduct of a parent and that section 622 does not require adequate weight of the evidence.

The statute sets forth the requirements which must be satisfied and the arguments advanced herein appear to be directed to the proof required which is a matter for the court to decide. The fact that one court might require more stringent proof than another does not make the statute unconstitutional. The constitutional arguments as presented by the mother upon this appeal do not establish due process infirmities in sections 611, 614 and 622 of the Family Court Act. The remaining contentions of the appellant are without merit.

The order should be affirmed, without costs.

GREENBLOTT, SWEENEY, MAIN and LARKIN, JJ., concur.

Order affirmed, without costs.