■ In the Matter of MARY ANN FF., Alleged to be a Perma-

nently Neglected Child. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DEBORAH FF., Appellant. (And Another Related Proceeding.)—Levine, J. Appeal (1) from an order of the Family Court of Clinton County (Feinberg, J.), entered December 19, 1985, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Mary Ann FF. a permanently neglected child, and terminated respondent's parental rights, and (2) from an order of said court, entered December 19, 1985, which dismissed respondent's application for custody of her child.

The instant permanent neglect proceeding culminates a lengthy history of contact between petitioner and respondent concerning the custody and welfare of respondent's infant daughter, Mary Ann, born in February 1979. Mary Ann was adjudicated a neglected child in 1981, based upon respondent's abuse of drugs and alcohol and her suicidal tendencies. The child was placed in the custody of respondent's mother, but in 1984 was voluntarily placed in foster care following an instance of sexual abuse by a neighbor. Petitioner subsequently commenced the instant permanent neglect proceeding based upon respondent's alleged failure to maintain substantial contact with or plan for the future of Mary Ann notwithstanding petitioner's diligent efforts to strengthen the parental relationship (see, Social Services Law § 384-b [7] [a]). Following a hearing, Family Court found Mary Ann to be a permanently neglected child, terminated respondent's parental rights, and dismissed the application for custody.

On appeal respondent contends that petitioner failed to sustain its burden of proving by clear and convincing evidence each of the foregoing necessary elements of a permanent neglect case. We disagree.

Regarding the evidence of petitioner's diligent efforts to reunite respondent and Mary Ann, the record establishes that Mary Ann was in foster care as a result of respondent's mental health problems, her abuse of alcohol and her inability to maintain a stable residence or budget. Respondent's foster care caseworker, Judith Laramie, testified that petitioner formulated a plan to ameliorate these problems. Laramie arranged for, inter alia, 52 office visits with respondent and herself, 35 visits between respondent and Mary Ann, and made 238 collateral contacts with other agencies and service providers on respondent's behalf. Respondent was counseled on the need for a stable and secure residence, personal hygiene, budgeting, parenting skills and alcohol abuse, and referrals and appointments were made regarding parenting

classes, vocational training, the local public housing agency, an alcohol abuse program and the county mental health clinic. Petitioner also arranged for transportation for visitation, public assistance, food stamps and Medicaid.

The foregoing amply established diligent efforts in terms of formulating a plan for respondent's future care of Mary Ann, and in arranging for and providing for transportation and visitation and for services and other financial assistance addressed to solving respondent's specific problems which rendered her unable to provide suitable care for Mary Ann (see, Social Services Law § 384-b [7] [f] [1]-[4]; *Matter of Star Leslie W.*, 63 NY2d 136, 142; *Matter of Sheila G.*, 61 NY2d 368, 373, 380-386; *Matter of Yvonne II.*, 121 AD2d 766, 767).

Regarding the adequacy of the proof of failure to plan or to maintain substantial contacts, initially it should be noted that these are alternative elements in the statutory definition of permanent neglect and both need not be proven *(Matter of Star Leslie W., supra,* at 142-143). Here, petitioner submitted overwhelming evidence of respondent's failure to plan. Social Services Law § 384-b (7) (c) provides that a parent may not merely propose a plan in the abstract; good-faith efforts are insufficient. Rather, the parent must take "such steps as may be necessary to provide an adequate, stable home and parental care for the child" (Social Services Law § 384-b [7] [c]). Additionally, Family Court may consider whether the parent has utilized services made available by the agency (Social Services Law § 384-b [7] [c]).

Here, respondent changed her residence six times after Mary Ann's placement in foster care and had continued problems budgeting her finances. She failed to attend Alcoholics Anonymous meetings, was terminated from the alcohol abuse program as a result, and only intermittently attended her mental health clinic sessions and parenting classes. Although afflicted with a seizure disorder requiring the use of medication, respondent failed to follow her doctor's advice to reduce her intake of caffeine and sugar, and she mixed alcohol and medication. Additionally, her behavior during visitation with Mary Ann remained inappropriate, even though she had been counseled on the need for change. She failed to either discipline Mary Ann or plan activities for the visits and she overfed Mary Ann with sweets and liquids.

Thus, the evidence amply establishes that despite petitioner's strong and continued efforts to assist respondent, respondent failed to utilize the services offered or take concrete steps to provide a secure and stable home environment for Mary

Ann. In fact, respondent's testimony at the hearing was that she did not want to be told what to do but wanted to plan her future herself. Since she failed to plan for Mary Ann's future, we need not address respondent's alternative argument concerning the insufficiency of evidence of her failure to maintain contact with the child.

Regarding Family Court's termination of respondent's parental rights, we are persuaded that the evidence was overwhelming that such a disposition was in Mary Ann's best interest. Mary Ann regressed while in respondent's care and showed improvement while in a stable foster home. The psychologists who worked with her testified that she needed a permanent and consistent environment which could not be provided by respondent. Neither Laramie nor other service providers were optimistic as to respondent's ability to either address Mary Ann's specific problems or adequately parent the child in the near future. Additionally, although respondent's expert, Dr. Richard Smith with whom she had commenced psychological treatment subsequent to the commencement of this proceeding, felt that respondent could properly parent Mary Ann within 18 to 24 months, his immediate prognosis was poor. Moreover, he was unaware of a great deal of either respondent's or Mary Ann's history and had not yet *directed* respondent to undertake a specific course of action for treatment, an experience with which all prior service providers had failed. Accordingly, Family Court's order terminating respondent's parental rights and its order dismissing her application for custody of Mary Ann must both be affirmed.

Orders affirmed, without costs. Kane, J. P., Casey, Weiss, Yesawich, Jr., and Levine, JJ., concur.