■ In the Matter of DIXIE LU EE. et al., Alleged to be Permanently Neglected Children. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DIXIE FF., Appellant.—Kane, J. P. Appeal from an order of the Family Court of Schenectady County (Griset, J.), entered October 30, 1984, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

Petitioner initiated this proceeding by filing two petitions seeking to permanently terminate respondent's parental rights over her two daughters, Dixie Lu and Louise. Dixie Lu was born on September 21, 1972 and Louise was born on October 28, 1975. In 1977, the children were adjudicated to be neglected and, with the grant of various time extensions, were placed in foster care through August 1984. An initial petition seeking to terminate respondent's parental rights on the ground of abandonment was dismissed due to petitioner's failure to provide an appropriate plan to aid respondent in regaining custody of the children. The within proceedings were commenced in January 1984, this time alleging permanent neglect on the basis that, although petitioner had made diligent efforts to encourage and strengthen the parental relationship, respondent failed for a period of more than one year after the children were placed with petitioner to plan for their future, while physically and financially able to do so (see, Social Services Law § 384-b [7] [a]). Following a hearing, Family Court granted the petitions and this appeal ensued.*

Initially, respondent argues that the petitions did not meet the requirements of Social Services Law § 384-b and Family Court Act § 614 (1) (c), which require a permanent neglect petition to affirmatively assert the efforts made by an agency to strengthen the parent-child relationship. However, respon-

---

* Petitions were also filed alleging permanent neglect against the father. In its decision, Family Court also terminated his parental rights; however, no appeal has been taken from that portion of the court's determination.

dent has raised this issue for the first time on appeal and therefore has not properly preserved this question for our review *(see, Matter of Van Wormer v Leversee,* 87 AD2d 942, 943). Nevertheless, even were we to address this issue, respondent's argument would fail.

It is true that an agency's petition seeking to terminate parental rights based on permanent neglect must first allege in detail its efforts to strengthen the parent-child relationship (Family Ct Act § 614 [1] [c]; *Matter of Sheila G.,* 61 NY2d 368, 384). Here, the petitions allege that such efforts were made through petitioner's providing for visitation periods for respondent with the children. They also alleged that respondent failed to maintain a residence adequate for day or overnight visits or for permanent placement of the children, and failed to follow a court-ordered rehabilitative service plan. In our view, although the petitions were less than artfully drawn, they were sufficiently specific to comply with the statutory requirements *(cf., Matter of Anita "PP",* 65 AD2d 18, 21-22). Additionally, *Matter of Anita "PP" (supra),* which respondent cites for support, is not to the contrary. There, in addition to an insufficiently specific petition, there was also no support found in the record for a finding of neglect *(see also, Matter of Sheila G., supra,* at 386-387).

Respondent next argues that petitioner failed to prove its allegations by clear and convincing evidence *(see, Santosky v Kramer,* 455 US 745, 747-748). We disagree. The threshold issue in a permanent neglect proceeding is whether the agency exercised diligent efforts to strengthen the parental relationship *(Matter of Star Leslie W.,* 63 NY2d 136, 142). Here, the record establishes that petitioner set up an initial visitation plan for respondent, who had not lived with her daughters for a number of years, to establish a parent-child bond. Her name was also placed on a waiting list for a family therapy program. She was counseled on the necessity of establishing a permanent residence. Petitioner's plan involved only visitation and local residence and did not concern services regarding unemployment and financial instability. However, these latter concerns were not part of respondent's underlying problems that kept her from regaining custody *(cf., Matter of Jamie M.,* 63 NY2d 388, 394-395). Therefore, in our view, the foregoing established diligent efforts in terms of formulating a plan for respondent's future care of the children.

As to the adequacy of the proof of respondent's failure to plan or maintain substantial contacts, it should be noted that

these are alternative elements in the statutory definition of permanent neglect and both need not be proven *(see, Matter of Star Leslie W., supra,* at 142-143; *Matter of Mary Ann FF.,* 129 AD2d 899, 901, *lv denied* 70 NY2d 605). Here, the evidence clearly supports a finding of respondent's failure to plan.

Respondent did comply with the visitation schedule until March 1983. She then went to Texas ostensibly to visit her son, who was in the custody of a Texas social services agency and was diagnosed as having tuberous sclerosis, a potentially life-threatening disease. However, she saw him only three times from February 1983 to November 1983. Respondent was told by her caseworker in New York that leaving this State would interfere with the plan devised by petitioner. With respect to the family therapy program, she left for Texas before her name was reached on the waiting list. She also refused to visit with her daughters when she briefly returned from Texas in August 1983. When she first left the area, she only belatedly gave a forwarding address and when she again left, no further forwarding address was ever received. A parent is required "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child[ren]" (Social Services Law § 384-b [7] [c]) and a court may consider whether the parent has utilized the services made available by the agency *(see,* Social Services Law § 384-b [7] [c]). Here, although respondent had a number of contacts with her children, she failed to adhere to petitioner's plan to enable her to establish bonds with the children and to work toward providing a secure and stable home environment for them.

Furthermore, petitioner had no affirmative duty to determine whether respondent's inabilities stemmed from psychological problems. Diligent efforts do not require that a parent be relieved of all initiative and responsibility for making a plan work *(see, Matter of Jamie M., supra,* at 393). We also reject respondent's claim that Family Court's conclusion that respondent lacked the ability to plan "perhaps because of some illness" was inconsistent with its factual findings. Although respondent claimed she was physically ill, no evidence was presented to support this claim. As to any emotional problems, mental disability is not an illness of a type that exempts those physically unable to care for their children from losing them under permanent neglect *(see, Matter of Hime Y.,* 52 NY2d 242, 251; *Matter of Candie Lee W.,* 91 AD2d 1106, 1107). Therefore, any emotional illness on respondent's part did not present any bar to the court's finding of permanent neglect.

Order affirmed, without costs. Kane, J. P., Mikoll, Harvey and Mercure, JJ., concur.