■ In the Matter of CHRISTINA Q., Alleged to be a Perma-

nently Neglected Child. WASHINGTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LORI Q., Appellant. (And Two Other Related Proceedings.)—Yesawich, Jr., J. Appeal from three orders of the Family Court of Washington County (Berke, J.), entered February 17, 1988, which granted petitioner's applications, in proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent's three children to be permanently neglected, and terminated respondent's parental rights.

Respondent is the natural mother of three children, Jennifer, Christina and John. Their natural fathers signed surrender instruments committing the guardianship and custody of their children to petitioner. In 1981, Christina was removed from respondent's home because respondent failed to provide proper medical care for her. In 1984, the remaining two children were placed in foster care as well.

Initially, petitioner obtained temporary custody of the children for a period of one year, but Family Court extended placement annually thereafter until 1986. At that time, petitioner commenced proceedings to have the children adjudicated permanently neglected and to terminate respondent's parental rights. Despite finding ample evidence that respondent did not plan adequately for the future of her children, Family Court dismissed the petitions because of respondent's request, the Law Guardian's recommendation, and respondent's obvious love and concern for her children. Family Court, in giving respondent another opportunity to plan for the children's future, observed that it could not allow foster care placement, which had already exceeded two years, to continue much longer. The court specifically directed respondent to attend mental health counseling with the children, abide by the terms of her service contract, obtain a permanent, stable home and steady employment, and attend parenting classes.

In 1988, after respondent failed to cooperate, petitioner commenced the instant permanent neglect proceedings. At the conclusion of the fact-finding hearing, Family Court determined that the children were permanently neglected in that respondent did not plan adequately for their future. Respondent's parental rights were terminated and guardianship and custody of the children were awarded to petitioner. On appeal, respondent challenges the sufficiency of the evidence underlying Family Court's determination. We affirm.

In any neglect proceeding, a threshold inquiry is whether the petitioning agency exercised diligent efforts to strengthen

the parental relationship *(Matter of Star Leslie W.,* 63 NY2d 136, 142; *Matter of Sheila G.,* 61 NY2d 368). The record demonstrates that petitioner assisted respondent in her employment and housing searches, developed flexible visitation schedules, gave respondent an adequate travel allowance, provided transportation on occasion for visitation, counseled respondent about disciplining her children and budgeting her income, arranged for respondent to attend mental health counseling and parenting skills classes, and advised respondent frequently of the objectives she would need to accomplish to have her children returned to her *(see,* Social Services Law § 384-b [7] [f]). Petitioner clearly identified the particular problems respondent faced and made affirmative, repeated and meaningful efforts to assist her in overcoming them *(see, Matter of Amber W.,* 105 AD2d 888, 890).

Although respondent concedes that petitioner generally did attempt to encourage and strengthen her relationship with her children, she maintains that because petitioner furnished her with what she believes was an inadequate travel allowance, $50 per month, and commenced six separate child support violation proceedings against her, petitioner's efforts were less than "diligent". The compulsion that an agency proceed diligently does not extend so far as to relieve the parent of any and all responsibility for strengthening the parental bond *(see, Matter of Dixie Lu EE.,* 142 AD2d 747, 749). Respondent exacerbated her travel difficulties in that she chose to live near her boyfriend in an area located outside Washington County, far from her children's foster home. Moreover, placing a child in foster care does not disburden the parent of financial responsibility for the child. In January 1986, Family Court had ordered respondent to pay a total of $45 per week in child support, of which respondent made only 10 payments in over two years. The record is devoid of any indication that petitioner harassed respondent to fulfill her obligation. Petitioner plainly met its statutory mandate of diligently attempting to reunite respondent with her children.

The evidence is equally compelling that respondent failed to plan for the children's future (Social Services Law § 384-b [7] [a]). That she neglected to plan for the housing needs of her children is not open to serious question. Her "plan" to establish a stable home for them was an apparently good-faith but quixotic aspiration to divorce her husband, marry her current boyfriend, begin a new family, and house all five members of the family in a one-bedroom apartment located in a nearby motel *(cf., Matter of Star Leslie W.,* 63 NY2d 136, 143, *supra).*

At the hearing, respondent manifested that she believed this one-bedroom motel apartment was adequate living space for two adults and three children. Moreover, although admonished many times by petitioner, respondent never did establish anything resembling a permanent home. Indeed, between November 1985 and January 1988, she relocated nine times, and many of these "homes" were motel or hotel rooms.

Nor can it be said that respondent parented her children safely. She allowed them to eat candy found in another's garbage and decided not to treat them for head lice because she purportedly lacked the funds to pay for the medicine. Moreover, petitioner's expert psychiatrist opined that respondent was emotionally dependent upon her children, while in a healthy relationship children are physically and emotionally dependent upon their parents. The expert further testified that respondent expressed no guilt or remorse that her brother-in-law had allegedly sexually abused the children.

In determining whether a parent adequately planned for a child's future, the court may also consider the parent's failure "to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]). In this regard, it is noteworthy that respondent regularly missed counseling sessions and parenting classes, did not pursue job opportunities and apartment openings, and omitted to take classes to obtain her graduate equivalency diploma or otherwise further her limited education.

Respondent's attempts to eliminate the conditions leading to the initial removal of her children and her attendance at some of the counseling and parenting sessions are somewhat heartening. Be that as it may, the fact remains that she has neither formulated nor put into effect a feasible and pragmatic plan for the future financial, physical or emotional well-being of her children despite having had ample opportunity to do so (see, Matter of John AA., 89 AD2d 738, 740, lv denied 58 NY2d 605). In sum, the record provides clear and convincing evidence supporting Family Court's adjudication of permanent neglect.

Finally, we note that testimony at the hearing suggests that respondent's only income is the $415 per month she receives from public assistance and that the record does not establish affirmatively that she was financially able to plan for her children's future (see, Matter of Anthony L. "CC", 48 AD2d 415, 418, lv denied 37 NY2d 708). The fact that a parent is on welfare has been held, in and of itself, not to excuse that

parent from the need to plan for the future of his child *(Matter of John W, 63 AD2d 750, 751)*. To conclude that a parent is not able to plan financially for his child, there must be unequivocal evidence that the amount of public assistance received is inadequate *(supra)*. Here, respondent has not demonstrated that her inability to develop realistic and workable plans for her children's future is due to inadequate public assistance *(see, Matter of Jennifer VV., 99 AD2d 882, 883)*. In fact, respondent testified that, with her boyfriend's assistance, she could afford housing costing $500 per month. More importantly, the record evinces that her financial difficulties are due in considerable part to her unwillingness to find and maintain employment.

Orders affirmed, without costs. Kane, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.