In the Matter of MARYANN ELLEN F., a Child Alleged to be Permanently Neglected.

Fourth Department, March 16, 1990

## APPEARANCES OF COUNSEL

*John J. Barone* and *George J. Trimper* for appellant.

*Christopher Jones, Law Guardian.*

## OPINION OF THE COURT

PINE, J.

Petitioner, Erie County Department of Social Services, brought this proceeding to terminate parental rights on the ground of permanent neglect. Family Court dismissed the petition against the father at the close of petitioner's proof based on weighing of testimony, a series of factual findings, and conclusions of law. That was error. On a motion to dismiss at the end of petitioner's case, the petitioner's proof must be accepted as true and petitioner is entitled to the most favorable inferences which can reasonably be drawn from such evidence *(see, Nicholas v Reason,* 84 AD2d 915). Evaluated by that standard, petitioner's proof clearly established a prima facie case.

Maryann Ellen was born on December 8, 1984 and is now five years old. She was voluntarily placed in foster care by her mother on April 15, 1985, when she was four months old, and she has been in foster care ever since. A neglect petition was brought against both parents in May 1985. The father admitted neglect without fault in December 1985 and an order was entered on January 6, 1986 placing the child in the custody of the Department of Social Services for 18 months. A separate order was entered against the mother. Placement with the petitioner was extended by Family Court.

The Department commenced a permanent neglect proceeding against both parents returnable in May 1988 under Family Court Act article 6 and Social Services Law § 384-b. It sought termination of parental rights based on failure to plan for the child's return and failure to follow through on counseling and other services. On June 20, 1988 Family Court approved the mother's surrender of the child for adoption and she is no longer involved. Petitioner was required to prove that the father has failed for a period of more than one year following the date the child came into care "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so" (Family Ct Act § 614 [1] [d]).

To establish a prima facie case the Department was re-

quired to prove only that permanent neglect occurred for a one-year period after placement on April 15, 1985 *(see, Matter of Star Leslie W.,* 63 NY2d 136, 146). Social Services Law § 384-b (7) (d) provides that a parent is not deemed unable to plan for the future of the child by reason of drugs or alcohol except while actually hospitalized or institutionalized therefor.

The preamble to Social Services Law § 384-b finds it desirable that children grow up in a permanent home and that, while generally the natural parent best provides this, and while the State's first obligation is to help the natural family, "when it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child" (Social Services Law § 384-b [1] [a] [iv]). It further finds that unnecessarily protracted stays of children in foster care may deprive children of positive nurturing family relationships and have deleterious effects on their development. The statutory scheme is intended to protect natural parents but also to further the best interests, needs and rights of children (Social Services Law § 384-b [1] [b]).

The father had problems with alcoholism and domestic violence. The Department offered proof that he failed to follow through on any treatment recommendations until December 1986, by which time the child had been in foster care for 20 months. The fact that the Department delayed another 18 months before bringing a termination proceeding and the fact that the father has made some slow progress after the child had been in care for more than 20 months are not relevant considerations in determining whether the Department has made a prima facie showing.

Family Court found that petitioner had acted improperly in planning for adoption of the child before parental rights had been terminated. There was evidence that the goal of adoption was first included in the case plan in October or November 1987, when the child had been in care over 2½ years, but that the Department continued to prefer a return home if a parent could provide a stable home *(cf., Matter of Leon RR,* 48 NY2d 117). This was discussed with the father to make him realize that Maryann Ellen needed permanency and that there was some time limit for him to be able to provide a home. The father expressed a preference that the Department retain the child rather than have his former wife obtain custody, and the father at one time asked whether, if he surrendered Maryann

Ellen, he and his current girlfriend would be eligible to adopt another child.

Simultaneously considering adoption and working with a parent is not necessarily inappropriate. Indeed, in this case, the Department could be faulted for moving too slowly toward a permanent home for Maryann Ellen. The court's finding that the Department failed to keep abreast of the father's progress, cited by the dissent, is contrary to the proof. In fact, the case had been reassigned to a second caseworker and it was the first caseworker, no longer on the case, who testified that he was unaware of the father's subsequent progress, while the second caseworker testified that she was.

The statutory scheme clearly recognizes the possibility that parents can grow to meet their parental responsibilities, so that a finding of permanent neglect does not automatically lead to termination of parental rights. Indeed, after a dispositional hearing the court has the authority to dismiss the petition, to suspend judgment on conditions, or to commit guardianship to the Department. No particular disposition is presumptively preferred; the court must base its disposition on the best interest of the child (Family Ct Act § 631).

I note that Family Court denied separate petitions by the father seeking to terminate the Department's custody and to extend visitation rights at the same time that it granted his motion to dismiss the permanent termination petition at the close of petitioner's case. Thus, the child remains in the limbo of foster care after nearly five years, without a father prepared to make a home for her and without authority in the Department to make plans for a permanent home. Accordingly, a new hearing is required.

DILLON, P. J. (dissenting). I respectfully dissent. It is my view of the record that Family Court accepted petitioner's proof as true and found that petitioner failed as a matter of law to demonstrate that it had made diligent efforts to encourage and strengthen the parental relationship as required by Social Services Law § 384-b (7).

Every order entered in this proceeding, including those extending custody, has been executed by the same Family Court Judge. Before testimony was taken at the hearing, there was an extended colloquy among the court, counsel, the Law Guardian and a caseworker. It is clear from that colloquy that the caseworker was intent upon having the child placed for adoption and had taken steps to effectuate that result. Indeed,

the record demonstrates that counsel for the Department attempted to separate the Department from that purpose by repeatedly disavowing shared intent with the caseworker. It was in that setting that testimony began.

The testimony offered by the petitioner amply supports the court's determination that the caseworker had improperly "planned for adoption of this child with the foster parents * * * prior to and without permanent termination of the parties' rights". The court condemned the "attempts" of the Department's agents "to go forward with an adoption with the foster parents as the proposed adoptive parents", and concluded that those efforts were inconsistent and incompatible with the Department's duty under the statute to encourage and strengthen the parental relationship (see, Social Services Law § 384-b [7]; *Matter of Leon RR,* 48 NY2d 117, 126).

Beyond that, the court justifiably derided the "plan" which the Department had established purportedly to strengthen the parental relationship. The court noted that the father had completed several aspects of the "plan" but that the caseworkers had failed to keep abreast of the father's progress. The court also concluded that the Department had failed to "accord * * * adequate visitation with the child" and had failed to notify either the father or the court that the child had been placed by the Department "in a foster home * * * where sexual abuse [of another child] occurred". The court also took note of the testimony of a caseworker that the father had made sufficient but slow progress through his counseling; that based thereon placement was thereafter successively extended; and that less than a month prior to the filing of the petition for permanent neglect, the father was "instructed to attend additional counseling". It is noteworthy also that one caseworker testified that she had "not ruled out the possibility" of the child being returned to her father.

On this record, I agree with the court's determination that petitioner failed to make out a prima facie case of permanent neglect. I also agree with the conclusion, implicit in Family Court's findings and decision, that with less concentration upon a future adoption and greater effort toward restoring a family relationship between father and daughter, there is a strong possibility that this child will be returned to the custody of her father. While I share the majority's lament that this child "remains in the limbo of foster care", that unfortunate circumstance results not from any error or impropriety on the part of Family Court, but rather from the lack

of diligence and planning by the Department of Social Services.

Accordingly, I would affirm Family Court's order.

BOOMER, GREEN and BALIO, JJ., concur with PINE, J.; DILLON, P. J., dissents in an opinion.

Order reversed, on the law, without costs, and matter remitted to Erie County Family Court for a new hearing, in accordance with the opinion of PINE, J.