■ In the Matter of RICHARD DD., Alleged to be a Permanently Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; FLORENCE EE., Appellant. (And Another Related Proceeding.) In the Matter of ERIC EE., Alleged to be a Permanently Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ERIC MM., Appellant. (And Another Related Proceeding.)—Mikoll, J. Appeal from an order of the Family Court of Otsego County (Mogavero Jr., J.), entered June 8, 1990, which granted petitioner's applications, in four proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children permanently neglected, and terminated respondents' parental rights.

Respondents, Florence EE. and Eric MM., challenge the finding of permanent neglect of their children and termination of their parental rights as to Tracy DD. and Richard DD., Florence's natural children, and Eric EE. and Kerri EE., Eric's natural children.

The children were placed in foster care in March 1988. Following a fact-finding hearing in May 1988, Family Court concluded that respondents "exercised excessive corporal punishment and beat the children with a belt, and struck Tracy with a shovel" and, accordingly, found that the children were neglected (Family Ct Act § 1012 [f] [i]). Following a dispositional hearing, Family Court ordered that (1) the children remain in foster care for 18 months, (2) respondents receive homemaking services and mental health counseling and at-

tend parenting classes, and (3) petitioner arrange for weekly supervised visitation with respondents and weekly visitation between the two foster homes caring for the children.

On August 10, 1989, petitioner filed four permanent neglect petitions seeking to terminate respondents' parental rights and free the children for adoption because of respondents' failure to take reasonable steps to provide for their children's future. Family Court found that the allegations contained in the petition were supported by clear and convincing evidence and, following a dispositional hearing, placed the children in the custody and guardianship of petitioner until they could be placed for adoption. This appeal ensued.

Respondents urge that petitioner failed to exercise diligent efforts to strengthen the parental relationship as statutorily required by Social Services Law § 384-b (7) (a). Respondents contend that the services offered were not adequate in view of their needs as borderline mentally retarded parents and that there was no reliable testimony as to whether their improvement and progress were commensurate with their abilities. They also urge that mental health counseling was aborted prematurely, not enough help was given to them to locate housing and employment, and petitioner failed to change caseworkers upon respondents' complaint of a conflict with the person assigned to their case.

We disagree. The record demonstrates that petitioner drafted service plans to reunite the family and identified the tasks respondents needed to accomplish in order to achieve that goal: providing adequate housing, education and clothing; learning to interact with and discipline the children; and acknowledging and addressing the reason for the children's removal from their home, i.e., excessive corporal punishment. These service plans and goals were reviewed with respondents. In an effort to help respondents accomplish these tasks, petitioner furnished respondents with a homemaker and parent aid to teach them homemaking skills and how to cope with the children, including appropriate disciplinary techniques. Petitioner also arranged for counseling for respondents at a mental health clinic and the children were also given individual counseling when the need occurred. In addition, weekly visitations between respondents and their children were arranged together with transportation.

Petitioner is required by statute to make reasonable attempts to encourage a meaningful relationship between the parent and child (see, Social Services Law § 384-b [7] [f]). Although the petitioning agency must proceed diligently, this

"does not extend so far as to relieve the parent of any and all responsibility for strengthening the parental bond" *(Matter of Christina Q.,* 156 AD2d 770, 772, *lv denied* 75 NY2d 708; *see, Matter of Dixi Lu EE.,* 142 AD2d 747, 749). While it is true that "the adequacy of the parents' plan must not be evaluated with reference to unrealistically high standards but must be looked at with a pragmatic view toward the capabilities of the parents" *(Matter of Jamie M.,* 96 AD2d 737, *affd* 63 NY2d 388), we hold that the mental limitations of respondents are not so debilitating as to have prevented them from confronting and attempting to resolve the problems with their children according to the plan set by petitioner *(cf., Matter of Chuck PP.,* 158 AD2d 859, *lv denied* 75 NY2d 710). We further conclude that respondents' infirmities were adequately considered in setting goals. Mental health counseling was discontinued because of respondents' refusal to face the reasons for their children being taken away. As to housing and employment efforts, respondents were told of the necessity of making efforts on their own. The record discloses that respondents, thus encouraged and instructed, checked newspapers for rentals and followed with calls and were eventually successful in finding employment and housing; however, this was after the neglect proceedings were initiated.

Respondents also urge that petitioner failed to prove by clear and convincing evidence that they failed substantially and continuously to maintain contact with or plan for the future of the children although physically and financially able to do so *(see,* Social Services Law § 384-b [7] [a]). Respondents contend that they participated in all the services offered by petitioner, visited their children and obtained employment and housing, albeit after the neglect petitions were filed. To satisfy the planning aspects, however, respondents not only needed to obtain employment and provide adequate housing, but also needed to demonstrate that they could be effective parents. This included an appreciation of and an ability to resolve conflicts with the children without resorting to inappropriate corporal punishment. Despite two years of aggressive work by petitioner with respondents in the form of a variety of assistance, respondents' progress was minimal. They never acknowledged their excessive use of punishment so that the problem leading to the children's placement was never addressed by them.

The record also reveals that respondents' ability to interact with the children continued to be minimal. Respondents displayed an inability to effectively discipline or comfort their

children during visitation, and their caseworker often needed to intervene when the children acted up. After visits with respondents, the children were emotionally hyper and negative. Florence was particularly unresponsive to the children; at times she totally failed to speak to the children during visitation. During visits, Eric sometimes nodded off. Additionally, Florence ignored the caseworker and generally evidenced an adversarial and counterproductive attitude. Respondents also blamed petitioner for their children's misbehavior. Neither parent displayed any interest in the children's education, or knew what grade they were in or how they were progressing. Though respondents accepted the services offered, their progress was poor. Respondents' antagonistic attitude never changed and made significant progress impossible. Inasmuch as respondents refused to acknowledge why their children had been placed in foster care (see, Matter of Crystal Q., 173 AD2d 912, 913 lv denied 78 NY2d 855) and made only a minimal effort to develop a parental relationship with their children (see, Matter of Salvatore TT., 159 AD2d 809, 811), we conclude that there is sufficient evidence to support Family Court's determination that respondents' children were permanently neglected.

Finally, although respondents contend that petitioner failed to explore options other than termination of their parental rights, i.e., long-term foster care, the record reveals that the children had been in foster care for two years when these proceedings were brought. Under these circumstances, Family Court properly concluded that termination of respondents' parental rights was in the children's best interests and that a permanent alternative home should be sought. This is in keeping with the mandate of Social Services Law § 384-b (1) (a) and Family Court Act § 631 (see, Matter of Maryann Ellen F., 154 AD2d 167, 170, appeal dismissed 76 NY2d 773).

We find no merit to the other contentions raised by respondents and decline to address them.

Mahoney, P. J., Casey, Weiss and Harvey, JJ., concur. Ordered that the order is affirmed, without costs.