(May 30, 1996)

■ In the Matter of AMORETTA V. and Another, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ELLA W. Appellant. [643 NYS2d 694] —Mikoll, J. P. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered May 25, 1994, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

Respondent's son, born in 1989, and daughter, born in 1991, were placed in petitioner's custody on November 6, 1991. On October 1, 1992, the children were adjudicated to be neglected within the meaning of Family Court Act § 1012 (f) (i) (B) and remained in petitioner's custody. Thereafter, on September 13, 1993, petitioner filed a permanent neglect petition against respondent. Family Court determined that the children were permanently neglected. A dispositional hearing was then held, which resulted in the termination of respondent's parental rights.* This appeal ensued.

As it is undisputed that petitioner exercised diligent efforts to encourage and strengthen the parental relationship and that respondent maintained contact with the children, the focus of this appeal is whether petitioner established by clear and convincing evidence that respondent failed for a continuous period of one year or more to substantially plan for the future of the children, although physically and financially able to do so (see, Matter of Michael B., 58 NY2d 71, 74; see also, Social Services Law § 384-b [7] [a]).

The record, taken as a whole, supports the finding that respondent permanently neglected her children for over one year in failing to plan for their future in violation of Social Services Law § 384-b (7) (a). Despite petitioner's early expectations that the family could be reunited and respondent's initial attempts

---

* A separate permanent neglect petition was filed against the children's father, which also culminated in the termination of his parental rights. He, however, is not a party to this appeal.

to comply with petitioner's program, petitioner's notes indicate that even at this point, the situation was precarious: "It was very shaky throughout the time of the kids being in placement, and the only way that we could really see if the parents had an ability or could take the responsibility of taking care of the children is to increase visits, give them more time with the children and see how they did".

The record establishes that respondent did in fact fail to comply with petitioner's plan in serious measure. From the time petitioner took over the care of the children, respondent's irresponsibility increased. Despite diligent attempts by petitioner to reunite the family, respondent was never able to adequately care for the children. She demonstrated a persistent inability to cope with the children. To the detriment of her children, she allowed various people to live in her small apartment despite repeated orders to desist. She allowed an abusive paramour to live there whom she then married. She failed to protect the children from his excessive physical abuse of them under the guise of discipline. Respondent's tolerance of his abuse of her was a source of alarm and emotional trauma to the children. Respondent also failed to cope with her son's serious asthmatic condition by allowing his medication to run out, by failing to administer it correctly and by failing to plan for sufficient supply of drugs to sustain him during his visits with her. She also continued to allow smoking in her apartment when her son was there, all to his detriment. The child often returned to foster care with breathing difficulties, and all the children returned from visits smelling of smoke.

We reject respondent's contention that she was unable to financially plan for the children's welfare. The fact that a parent is receiving public assistance does not automatically excuse the parent from planning for the future of her children. Financial inability requires unequivocal proof that the amount of public assistance is inadequate (*Matter of Christina Q.*, 156 AD2d 770, 774, *lv denied* 75 NY2d 708). Part of the proof here as to respondent's inability to plan was her failure to have enough food for the children during visits. Despite being given food vouchers in the amount of $50 per child per visit to pay for the children's food, respondent told petitioner that she could not feed the children on two occasions.

While respondent did make some initial progress in her parenting classes, she failed to cooperate with the Special Children's Center vis-à-vis her son's problems and generally failed to advance in parenting skills because of lack of contact and attendance at meetings. This was cogently laid bare in the

record. Furthermore, the bedding situation for the children was totally inadequate. Respondent also failed to keep her daughter clean, and the child returned to foster care with diaper rash. Finally, respondent's attendance at alcoholism counseling was sporadic and she failed to complete a prescribed program.

Accordingly, Family Court's order granting the petition is affirmed.

Mercure and Spain, JJ., concur.

White, J. (dissenting). We respectfully dissent.

After the children were placed in petitioner's custody, respondent had visitation twice a week with them in her home. Although the evidence shows that she did not meet all of the requirements of the service plan, a service plan review prepared by petitioner on February 21, 1992 indicated that respondent was participating in the court-ordered services. A similar review undertaken by petitioner on August 22, 1992 stated that respondent "has actively participated in all court ordered services" and because "she has done well * * * upon completion of these services, her children should be * * * returned to her custody".

In our view these service plan reviews compromise petitioner's position in this proceeding, for it is reasonably inferable therefrom that until late August 1992 respondent did plan for the future of her children by taking real, affirmative and meaningful steps manifesting a sense of responsibility toward them (see, Matter of Matthew C., 216 AD2d 637, 638). Otherwise, petitioner would not have envisioned returning the children to her custody. Thus, insofar as the period between November 6, 1991 and August 22, 1992 is concerned, petitioner's evidence does not meet the "clear and convincing" standard as it cannot be concluded that it was highly probable that respondent failed to plan during such period (Prince, Richardson on Evidence § 3-205, at 104 [Farrell 11th ed]). Assuming that petitioner's evidence is sufficient for the period between August 22, 1992 and June 25, 1993, reversal of Family Court's order is nevertheless mandated because this period falls short of the statutory requirement that the period of neglect must encompass a continuous period of one year* (see, Matter of Star Leslie W., 63 NY2d 136, 146; compare, Matter of Ian II., 173 AD2d 898).

Casey, J., concurs. Ordered that the order is affirmed, without costs.

---

* The parties stipulated to limit the proof to the period between November 6, 1991 and June 25, 1993.