■ In the Matter of JENNIE KK., a Child Alleged to be Permanently Neglected. SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NANCY LL., Appellant. [657 NYS2d 231] —Cardona, P. J. Appeal from an order of the Family Court of Saratoga County (James, J.), entered December 19, 1995, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Jennie KK. a permanently neglected child, and terminated respondent's parental rights.

On March 27, 1995, a petition was filed in Family Court requesting that respondent's daughter (born in 1988) be declared a permanently neglected child and that respondent's parental rights be terminated. Prior to filing the subject petition, the child had been in foster care for approximately four years with respondent's consent following an adjudication of neglect by respondent. The neglect proceeding was commenced after the child had been taken to the hospital and treated for lacerations to her lip and nose area and numerous bruises and abrasions about her face, cheek, nose, chin, body, neck, back and legs. Since the initial finding of neglect, the child has been continually in foster care and/or hospitalized in a mental health facility to receive treatment for her Attention Deficit Hyperactivity Disorder (hereinafter ADHD) and possible post-traumatic stress disorder. Over the course of this period, respondent, with petitioner's assistance, also underwent a variety of treatments and programs to, *inter alia*, assist her with developing her parenting skills, to deal with her alcoholism and to aid her with her mental health problems.

In June 1991, petitioner allowed a trial discharge to occur whereby the child was allowed to return to respondent's care on a trial basis. This trial discharge was unsuccessful in that

respondent drank during this period and, as a result, the child was returned to foster care. Petitioner next attempted to institute unsupervised home visits. However, in 1993 respondent again resorted to physical violence to discipline the child, causing petitioner to discontinue these visits. It was after this incident that the child began expressing feelings that she did not feel safe with her mother. As a result of these difficulties, it was thereafter determined that visitation had to be supervised.

During the course of the child's treatment with mental health professionals, allegations of sexual abuse involving respondent were raised toward the end of 1993 based on drawings made by the child and incidents that the child described to her doctors. Respondent was indicated for sexual abuse in February 1994. Respondent consistently denied these latter allegations and an abuse petition was adjourned in contemplation of dismissal. Prior to the institution of the termination petition, the counselors working with respondent at petitioner's direction determined that services should be terminated principally due to respondent's failure to admit the sexual abuse allegations and also her continuing failure to acknowledge her daughter's pain and fears.[1] Following the hearing on the subject petition, Family Court, consistent with the Law Guardian's recommendation, granted the petition and terminated respondent's parental rights. Respondent appeals.

Respondent's sole contention on appeal is that petitioner, as a matter of law, failed to establish the "required criteria to justify termination of [her] parental rights". According to respondent, petitioner failed to show by clear and convincing evidence that it made diligent efforts to strengthen and reunite the family and, second, that petitioner failed to show that respondent failed to maintain contact with and plan for the future of her child. We disagree.

"The issue of [an agency's] diligent efforts is a threshold inquiry in [a] permanent neglect proceeding and [the agency] bears the burden of proof on the issue by clear and convincing evidence " (*Matter of Jesus JJ.*, 232 AD2d 752, 753, *lv denied* 89 NY2d 809 [citation omitted]). From the record submitted in this case, it is clear that petitioner made diligent efforts to

---

1. We note that while there was testimony to the effect that it was the policy of the Saratoga County Mental Health Unit to terminate services when a patient who has been indicated for sexual abuse denies the allegations, there was also testimony that a treating agency would not terminate services unless it was convinced that all possible avenues had been exhausted and reunification of the parent and child was not possible.

reunite this family, but those efforts failed due to respondent's failure to take responsibility for her actions and her inability to deal with her daughter's problems and her daughter's pain. Testimony was offered describing the numerous types of assistance offered respondent which included concrete plans and goals that were realistically tailored to meet respondent's needs with respect to, *inter alia*, her alcoholism and depression.[2] Over the course of the intervening years, respondent received parenting classes, mental health counseling, alcoholism services and classes designed to help parents of children with ADHD. Although respondent participated in these programs, all attempts to return the child to respondent failed after it became clear that respondent could not handle the responsibility of caring for the child. Respondent's former therapist, Beverly Lazar, explained in detail that the situation between respondent and her child remained at an impasse because, although respondent was cooperative in attending classes and arranging for others to care for her child, she consistently failed to apply what she had been taught in parenting classes and counseling sessions to her actual interaction with her daughter. Treating caseworkers, the child's psychiatrist and other witnesses associated with petitioner testified to the effect that the child had not bonded with respondent, was resisting visitation and did not want to return to respondent's home. Thus, we conclude that petitioner provided respondent with the assistance necessary to overcome the particular conditions which separated her from her child (*cf., Matter of Jessica UU.*, 174 AD2d 98).

We note that although many arguments have been advanced in this case in relation to the termination of respondent's services by the Saratoga County Mental Health Unit following respondent's refusal to admit the unproven allegations of sexual abuse, we find that petitioner did not demonstrate a lack of diligence by failing to arrange other services once her original programs were terminated. Unlike the situation in *Matter of Charlene TT.* (217 AD2d 274), here respondent was not directed to a sex offender program and the primary focus of petitioner's plan was not to address the issue of sexual abuse. Petitioner's witnesses made it clear that, even before these charges were made, respondent consistently failed to meet the goals and objectives set out in her treatment plan until, ultimately, all possible programs or plans had been tried or exhausted. Lazar indicated in her testimony that, rather than

---

2. In fact, one of respondent's treating professionals testified that "[i]t's unusual that all of these resources would be used in one family situation".

requiring a full admission from respondent, it would have been enough for respondent to simply acknowledge her daughter's beliefs by "even saying on a minute level, Jennie, what is it you think mommy did". Clearly, respondent's counselors were primarily concerned with her failure to support her child and validate her fears and anger over being abused. Under these circumstances, "petitioner cannot be faulted for not doing more than it did to provide the assistance necessary for respondent to overcome the [conditions] that prevented respondent from being united with [her child]" (*Matter of Jesus JJ., supra*, at 754).

Turning to the issue of respondent's failure to plan for the future of her child, we conclude that despite the assistance offered and respondent's various efforts toward self-improvement, the record indicates that respondent's responses to these programs did not *meaningfully* address the problems so as to foster a sense of security in her child (*see, e.g., Matter of Jesus JJ., supra*, at 753; *Matter of Shavonda GG.*, 232 AD2d 780, 781-782; *Matter of Amoretta V.*, 227 AD2d 879, *appeal dismissed* 89 NY2d 935). Specifically, along with being unable to discipline her daughter effectively and deal with the child's ADHD, there was also testimony that respondent consistently blamed her daughter and/or the child's ADHD for the family's problems. As previously noted, petitioner's witnesses testified that, throughout her treatment, respondent refused to appropriately admit her responsibility in hurting her child and she could not acknowledge, and thereby validate, the pain and fear suffered by her child as a result of, *inter alia*, the physical abuse inflicted upon her daughter (*see, Matter of Beverly K.*, 213 AD2d 795, 796). Without this validation and the resulting development of trust and security in the child, it was stated that there was no *realistic* possibility of reunification in the near future.[3]

In our view, these factors, as opposed to any alleged inadequacies in petitioner's plan, prevented a timely return of the child to respondent's home and lead inexorably to the conclusion that respondent did not adequately plan for the future return of her child despite being physically and financially able to do so (*see, Matter of Jesus JJ., supra*, at 754; *Matter of Tasha LL.*, 227 AD2d 795, 797, *lv denied* 88 NY2d 813).

Casey, Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.

---

3. Significantly, even respondent's current therapist, who testified on her behalf, could not state with any specificity when reunification would be possible.