Matter of Kiara F. (Evan F.) (2024 NY Slip Op 04867)

Matter of Kiara F. (Evan F.)

2024 NY Slip Op 04867

Decided on October 4, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 4, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, NOWAK, AND DELCONTE, JJ.

578 CAF 23-00269

[*1]IN THE MATTER OF KIARA F. CAYUGA COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER-RESPONDENT; EVAN F., RESPONDENT-APPELLANT.

THOMAS L. PELYCH, HORNELL, FOR RESPONDENT-APPELLANT.
LISA A. BOWMAN, PINEHURST, NORTH CAROLINA, FOR PETITIONER-RESPONDENT. 
CYNTHIA B. BRENNAN, AUBURN, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Cayuga County (Jon E. Budelmann, A.J.), entered November 10, 2022, in a proceeding pursuant to Social Services Law § 384-b. The order, inter alia, adjudicated the subject child to be permanently neglected. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Respondent father appeals from an order of fact-finding and disposition adjudicating the subject child to be permanently neglected and ordering that the child be placed in the custody of an authorized agency and the maternal grandmother, who had filed a petition for custody pursuant to Family Court Act article 6 during the pendency of the permanent neglect proceeding.
The father contends that petitioner was required to change the permanency goal to adoption prior to petitioning to terminate his parental rights in order to avoid concurrent permanency goals that were inherently contradictory. Even assuming, arguendo, that this contention is preserved, we conclude that it is without merit. Under the Family Court Act, "[a]t the conclusion of each permanency hearing, the court shall . . . determine and issue its findings, and enter an order of disposition in writing: (1) directing that the placement of the child be terminated and the child returned to the parent . . . ; or (2) where the child is not returned to the parent . . . : (i) whether the permanency goal for the child should be approved or modified and the anticipated date for achieving the goal. The permanency goal may be determined to be: (A) return to parent; (B) placement for adoption with the local social services official filing a petition for termination of parental rights; (C) referral for legal guardianship; (D) permanent placement with a fit and willing relative; or (E) placement in another planned permanent living arrangement" (§ 1089 [d]).
Here, Family Court did not impose concurrent permanency goals (cf. Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1098-1099 [3d Dept 2012]). Rather, the goal remained return to parent. Additionally, an agency "is permitted to evaluate and plan for other potential future goals where reunification with a parent is unlikely . . . , and [s]imultaneously considering adoption and working with a parent is not necessarily inappropriate" (Matter of Anastasia S. [Michael S.], 121 AD3d 1543, 1544 [4th Dept 2014], lv denied 24 NY3d 911 [2014] [internal quotation marks omitted]; see Matter of Joshua T.N. [Tommie M.], 140 AD3d 1763, 1763 [4th Dept 2016], lv denied 28 NY3d 904 [2016]; Matter of Maryann Ellen F., 154 AD2d 167, 170 [4th Dept 1990], appeal dismissed 76 NY2d 773 [1990]).
In addition, we reject the father's contention that his due process rights were violated [*2]because he was not provided with sufficient notice that petitioner sought to terminate his parental rights. That contention is belied by the record, which contains repeated instances in which the father was notified that petitioner sought to terminate his parental rights and supported the maternal grandmother's custody petition.
The father further contends that petitioner failed to establish that it exercised the requisite diligent efforts to encourage and strengthen the parent-child relationship (see Social Services Law § 384-b [7] [a]). We reject that contention. "Diligent efforts include reasonable attempts at providing counseling, scheduling regular visitation with the child[ ], providing services to the parents to overcome problems that prevent the discharge of the child[ ] into their care, and informing the parents of their child[ ]'s progress" (Matter of Briana S.-S. [Emily S.] [appeal No. 2], 210 AD3d 1390, 1391 [4th Dept 2022], lv denied 39 NY3d 910 [2023] [internal quotation marks omitted]; see Matter of Star Leslie W., 63 NY2d 136, 142 [1984]). "An agency which has tried diligently to reunite a [parent] with [their] child but which is confronted by an uncooperative or indifferent parent is deemed to have fulfilled its duty" (Star Leslie W., 63 NY2d at 144; see Matter of Cheyenne C. [James M.] [appeal No. 2], 185 AD3d 1517, 1519 [4th Dept 2020], lv denied 35 NY3d 917 [2020]; Matter of Nassau County Dept. of Social Servs. v Diana T., 207 AD2d 399, 401 [2d Dept 1994]). "Petitioner is not required to guarantee that the parent succeed in overcoming his or her predicaments . . . , and the parent must assume a measure of initiative and responsibility" (Matter of Kemari W. [Jessica J.], 153 AD3d 1667, 1668 [4th Dept 2017], lv denied 30 NY3d 909 [2018] [internal quotation marks omitted]). Here, the record establishes "by clear and convincing evidence that, although petitioner made affirmative, repeated, and meaningful efforts to assist [the father], its efforts were fruitless because [the father] was utterly uncooperative" (Cheyenne C., 185 AD3d at 1519 [internal quotation marks omitted]). Indeed, the testimony and the exhibits submitted by petitioner demonstrate that, although petitioner attempted to maintain contact with the father and to work with him toward his service plan goals, the father failed to cooperate in any meaningful manner.
Entered: October 4, 2024
Ann Dillon Flynn
Clerk of the Court