■ In the Matter of JOSEPH ZZ., a Child Alleged to be Permanently Neglected. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MARY A., Appellant. [666 NYS2d 827] —Spain, J. Appeals from two orders of the Family Court of St. Lawrence County (Nelson, J.), entered June 27, 1995 and August 25, 1995, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Respondent is the mother of a son, Joseph (born in 1988); the child's father is unknown. On March 6, 1989 as the result of a preliminary removal order pursuant to Family Court Act § 1027, the child first came into the care and custody of petitioner. On November 1, 1993 petitioner commenced the instant proceedings to terminate respondent's parental rights based upon allegations that the child was permanently neglected and that respondent was at that time and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for the child. At the time of the filing of the petition, the child had been in foster care upwards of fifteen months. Thereafter, the court appointed Ralph Johns, the licensed chief psychologist of the local Community Mental Health Services, to evaluate the respondent. Johns met with

respondent on four separate occasions; he interviewed her regarding her extensive history of mental problems and hospitalizations and he administered personality and intelligence tests. Fact-finding hearings were commenced in August 1994 and completed in November 1994. Johns and the child's caseworker testified on behalf of petitioner. Respondent presented her own testimony, together with testimony from a former neighbor and the child's foster mother. Following the hearing, Family Court determined that the child was a permanently neglected child within the meaning of Social Services Law § 384-b (7) (a) and also that respondent was unable at that time and for the foreseeable future, by reason of her mental illness, to provide proper and adequate care for the child. Family Court terminated respondent's parental rights and granted guardianship and custody to petitioner. Respondent appeals.

We affirm. Initially, we reject respondent's contention that Family Court erred by failing to dismiss the permanent neglect petition based upon petitioner's failure to affirmatively assert in the petition, in sufficient detail, their efforts to encourage and strengthen the parent-child relationship and to reunite the family. It is well settled that the agency bringing the petition to terminate parental rights must specify and affirmatively plead in detail the diligent efforts taken (*see, Matter of Sheila G.*, 61 NY2d 368, 384; *see also*, Family Ct Act § 614 [1] [c]). Without sufficient allegations of the diligent efforts made by a petitioner, the court is without jurisdiction to find permanent neglect and, therefore, cannot make a disposition in the matter (*see, Matter of Phillip Whitney B.*, 199 AD2d 1061). Although the better practice is that the allegations should be made in great detail, the failure to do so is not fatal where the details are established on the record at the hearing (*see, Matter of Dixie Lu EE.*, 142 AD2d 747). Here, the petition alleged that petitioner: "made diligent efforts to encourage and strengthen the parental relationship in that petitioner has provided caseworker counseling; mental health referrals; homemaker services; visitation, supervised and unsupervised; parenting classes; parent aide; foster care services; volunteer transportation; and, day care. In addition respondent has been referred to or participated with UCP services; Early Intervention; Seaway House; and, CRC." At the hearing, the child's caseworker testified in detail about the various services provided and a number of exhibits detailing the services were also submitted. In our view, the proof adduced at the hearing substantially detailed and supported those efforts. Accordingly, we conclude that Family Court did not err in refusing to dismiss the inartfully drawn petition.

Next, we reject respondent's contention that Family Court erred in terminating her parental rights because petitioner failed to establish by clear and convincing evidence that respondent had not maintained sufficient contact with her child or planned for his future. In order to terminate a parent's rights on the basis of permanent neglect, the petitioner must show by clear and convincing evidence for the relevant one year period either that the parent (1) failed to substantially and continuously maintain contact with the child, or alternatively, (2) failed to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship (see, Social Services Law § 384-b [7] [a]). Parents are required to " 'take steps to correct the conditions that led to the removal of the child from their home * * * [and] to project a future course of action, taking into account * * * how the child will be supported financially, physically and emotionally' " (Matter of Nathaniel T., 67 NY2d 838, 840, quoting Matter of Leon RR., 48 NY2d 117, 125). Even if the agency has fulfilled its duty of diligent efforts, it "is not a guarantor of a parent's success * * * [and a] finding of permanent neglect is warranted despite participation in programs where there are relapses and the problem has not been ameliorated" (Matter of Amanda R., 215 AD2d 220, lv denied 86 NY2d 705 [citations omitted]). Therefore, it is incumbent upon a parent to take the initiative and plan for the child's future including removing any destructive tendencies from the parent's own life (see, Matter of Jessica MM., 122 AD2d 462, 463, lv denied 68 NY2d 612; Matter of Ronald YY., 101 AD2d 895, 896).

Here, the record supports the conclusion that respondent did not adequately plan for the child's future. Despite her sporadic contact with the child and her acceptance of some of the services provided by petitioner, there was no real change in her ability to care for her child or to adequately provide for his future. Respondent's life continued to be characterized by severe instability and stress regarding the care of the child, including a pattern of changing living arrangements and personal relationships, culminating in her 1994 move to Illinois. Although respondent did maintain contact with her child, she canceled visitations for various, often trivial, reasons and she also chose to delay home trial periods numerous times. When the home trial finally occurred, she was unable to handle the stress and the visit was terminated at her request. On one occasion, she left the child in the care of the person living with her, who had been accused of sexually abusing the child, in violation of an order of protection. Additionally, respondent

was often hostile in her relationship with petitioner. Such hostility and uncooperative behavior is a factor in determining whether or not a parent can adequately plan for the future of her child (*see, Matter of Elizabeth Q.*, 216 AD2d 628, *lvs denied* 86 NY2d 706).

Respondent, however, contends that the evidence on the record indicates that she did attempt to take some steps to plan for her child's future. Specifically, she contends that she completed some of her assigned tasks, remained in counseling, accepted agency services and attended various programs recommended by petitioner. However, these efforts have not been sufficient and have not resulted in an improvement in respondent's ability to plan for and care for her child. A parent must do more, including gaining insight into and an understanding of the problems and making progress toward changing behaviors that endanger the child (*see, Matter of Society for Seamen's Children v Shirley L.*, 224 AD2d 626, 627). Even where the parent attends therapy, the failure to make adequate therapeutic progress constitutes a failure to adequately plan for the child (*see, id.*, at 627). Good faith efforts are not enough and evidence of an attempt to plan is not sufficient to negate a finding of permanent neglect for the failure to plan (*see, Matter of Louise Wise Servs.*, 135 AD2d 385, 389). As Family Court found, respondent did not make the over-all and permanent changes that were required to provide a stable and safe home (*see, Matter of Shannon U.*, 210 AD2d 752, 754, *lv denied* 85 NY2d 807). Where evidence of a parent's lack of insight into her psychiatric problems and inability to adequately care for her child is overwhelming, termination is appropriate (*see, Matter of Claudina Paradise Damaris B.*, 227 AD2d 135).

Finally, we reject respondent's contention that petitioner's proof of her mental illness was legally insufficient. Respondent's assertion that Johns is not a qualified psychologist under Social Services Law § 384-b (6) (e), was not raised at the time of his appointment or at the hearing and, therefore, was not preserved for appellate review (*see, Matter of Amanda R.*, 215 AD2d 220, 221, *supra; see also, Matter of Dixie Lu EE.*, 142 AD2d 747, 748, *supra*). In any event, the record reveals that Johns is a qualified and experienced psychologist (*see,* Social Services Law § 384-b [6] [e]). No contradictory evidence was introduced.

It is well settled that for termination of parental rights by reason of mental illness the petitioner must establish that the parent was "presently and for the foreseeable future unable, by

reason of mental illness or mental retardation, to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the date on which the petition is filed" (Social Services Law § 384-b [4] [c]; *see, Matter of Daniel Aaron D.*, 49 NY2d 788, 790). "Mental illness" is defined as: "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act" (Social Services Law § 384-b [6] [a]).

Here, Johns, based on the results of the tests he administered, his review of respondent's prior clinical records, his interviews with her and his years of clinical experience, diagnosed respondent as having a personality disorder not otherwise specified. In his opinion, this condition would most likely result in the neglect of a child left in her care in that it would affect her ability to parent the child by: (1) antagonism to recommendations made by people providing services; (2) antagonism to the people providing services; (3) stubbornness to the point of damaging the child; (4) lack of responsiveness to the child's needs; (5) insufficient supervision of the child; (6) inconsistency in, as well as over, or under, disciplining the child; and (7) a marked decrease in ability to care for the child during times of stress. He also stated that this condition would most likely last into the foreseeable and indefinite future. Although Johns did not review the records of respondent's most recent counseling sessions or prior hospitalization records, he stated that his prognosis would not have been different if he had; notably, respondent did not provide any evidence of substantial improvement as a result of recent counseling. Johns also noted that the available psychotherapy treatment for this disorder would not be successful in respondent's situation because the nature of the disorder interferes with the therapy. In our view, the clear and convincing burden on petitioner was satisfied (*see, Matter of Donald LL.*, 188 AD2d 899, 902).

Upon our review of all of the evidence in the record, we find no reason to disturb Family Court's determination.

Cardona, P. J., Mercure, White and Peters, JJ., concur. Ordered that the orders are affirmed, without costs.