■ In the Matter of MATTHEW YY., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DEBORAH ZZ. et al., Appellants. DONALD J. SCHWARTZ, as Law Guardian for MATTHEW YY., Appellant. (And Three Other Related Proceedings.) [710 NYS2d 460] —Cardona, P. J. Appeal from an order of the Family Court of Otsego County (Scarzafava, J.), entered April 12, 1999, which partially granted petitioner's applications, in four proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be permanently neglected and abandoned, and terminated respondents' parental rights.

Respondent Deborah ZZ. (hereinafter the mother) and respondent David YY. (hereinafter the father) are the parents of Matthew (born in 1993) and Christian (born in 1995). Since 1995, the father has spent most of the time in prison, although he was scheduled for release in September 1999. In September 1996, the children came into petitioner's care and were placed in a foster home due to allegations that the mother used excessive corporal punishment and left them unattended.

Petitioner subsequently offered the mother a variety of resources in an effort to reunite her with the children. As a result of the mother's apparent failure to fully cooperate and utilize the services and the father's failure to maintain meaningful contact with the children, petitioner filed four petitions on May 26, 1998 alleging permanent neglect of the children by both parents and abandonment of the children by the father. Following a fact-finding hearing, Family Court determined, *inter alia*, that the mother had permanently neglected the children and the father had abandoned them. After a dispositional hearing, the court issued an order terminating their parental rights and providing that the children must be placed together for adoption, resulting in this appeal.

In challenging Family Court's finding that she permanently neglected the children, the mother argues that petitioner failed to adequately address her limited intellectual and emotional functioning and, therefore, did not undertake diligent efforts to reunite her family. She further asserts that the totality of the circumstances reveal that she substantially and consistently planned for the return of her children. We do not agree.

In order to establish permanent neglect, there must be clear and convincing proof that, for a period of one year following the child's placement with an authorized agency, "the parent (1) failed to substantially and continuously maintain contact with the child, or alternatively, (2) failed to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Joseph ZZ.*, 245 AD2d 881, 883, *lv denied* 91 NY2d 810; *see*, Social Services Law § 384-b [7] [a]). The threshold inquiry is whether the agency exercised diligent efforts which shall include, *inter alia*, providing "counseling, making suitable arrangements for visitation, providing assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care and advising the parent at appropriate intervals of the child's progress and development" (*Matter of Star Leslie W.*, 63 NY2d 136, 142; *see*, *Matter of Sykia Monique G.*, 208 AD2d 535, 536-537). The parent also has responsibilities and must take affirmative steps to correct the conditions which led to the child's removal and realistically plan for the child's future financial, physical and emotional support (*see*, *Matter of Star Leslie W.*, *supra*, at 142-143; *Matter of Joseph ZZ.*, *supra*, at 883). Notably, a parent's failure to utilize available services or fully cooperate with the authorized agency are factors to be considered in assessing whether a parent has complied with

the statutory requirements (*see, Matter of Jamie M.*, 63 NY2d 388, 393; *Matter of Joseph ZZ., supra*, at 883-884).

In the instant case, evidence was presented that petitioner made a number of resources available to the mother, including parent aide services, parenting classes, transportation services, mental health counseling, casework counseling and guidance with budgeting money. In addition, the mother was encouraged to obtain employment or apply for public assistance benefits and to seek stable housing since she frequently moved after living temporarily with friends and relatives. The goals were for the mother to improve her parenting skills, control her anger, secure safe and stable housing, obtain employment or public assistance and attend counseling at the mental health clinic. While the June 1997 service plan indicated that the mother's emotional and mental low functioning interfered with her parenting skills, the mother had no diagnosable mental or emotional disturbance.

The transcript of the hearing discloses that the mother had a relatively poor record of meeting the goals established by petitioner through utilization of available services. She attended mental health counseling and parenting classes only a few times. She missed approximately one third of the supervised visitation sessions and was late for many of the appointments. She did not always follow through with the suggestions of the parent aide supervising the visitation. In addition, she maintained infrequent contact with the foster mother. Notwithstanding petitioner's suggestions, the mother did not apply for public assistance nor seek stable housing through the housing department.

According to the parent aide supervising visitation, there were no significant changes in the mother's parenting abilities since the aide started working with her in October 1996. The aide attributed the lack of progress to the mother's failure in implementing a realistic long-term plan for the return of her children and not to the mother's inability to implement the plan. Similarly, the caseworker initially assigned to the case opined that the mother was capable of following through with the service plan devised for her, but failed to successfully complete it because she was inconsistent in keeping appointments.

In view of this evidence, we find that petitioner exercised diligent efforts in seeking to reunite the mother with her children, adequately taking into account her low mental and emotional functioning (*see, Matter of Sarah B.*, 203 AD2d 747, 748; *Matter of Candie Lee W.*, 91 AD2d 1106, 1107-1108). The

mother failed to fully avail herself of the many services provided by petitioner to assist her in overcoming these obstacles. Furthermore, the record supports the conclusion that the mother failed to properly plan for the children's future. Therefore, we decline to disturb Family Court's determination to terminate the mother's parental rights.

Next, the father challenges Family Court's decision terminating his parental rights on the ground that he abandoned the children. In order to terminate parental rights on the ground of abandonment, there must be clear and convincing evidence that, for a period of six months prior to the filing of the abandonment petition, the parent failed to visit or communicate with the children and was not prevented or discouraged from doing so by the authorized agency (see, Matter of Omar RR., 270 AD2d 588, 588-589; Matter of Charles U., 254 AD2d 588, 588-589; see also, Social Services Law § 384-b [5] [a]). "The burden is upon the parent to demonstrate that he or she maintained sufficient contacts with the child" (Matter of Charles U., supra, at 589 [citation omitted]). Notably, in abandonment proceedings, the authorized agency is under "no obligation to exercise diligent efforts to encourage [the parent] to have a meaningful relationship with his child" (id., at 590; see, Social Services Law § 384-b [5] [b]).

In the case at hand, the father was incarcerated during the six-month period prior to the filing of the abandonment petitions and remained so at the time of the fact-finding hearing. During his incarceration, he had no direct contact with the children or their foster mother. The record discloses that he wrote two letters to petitioner, one postmarked November 14, 1997 and the second postmarked May 22, 1998, apparently in response to letters sent by petitioner inquiring about his future plans for his children. In the letters, the father failed to articulate specific plans for obtaining employment or providing for the children's housing or education upon his release from prison. Inasmuch as incarceration did not excuse the father's failure to maintain contact with the children (see, Matter of Shannon QQ., 262 AD2d 679, 680; Matter of Antwan Malik F., 232 AD2d 216, 217), and the record reveals that the father neglected to maintain sufficient contact during the relevant time period, we decline to disturb Family Court's finding of abandonment.

Lastly, Matthew's Law Guardian argues that Family Court's order directing that the children be placed for adoption together is not in Matthew's best interest. Specifically, he asserts that the order precludes Matthew from being placed with the adop-

tive parents of Dustin, who is the older brother of Matthew and Christian. They have expressed an interest in adopting Matthew but not Christian. We note that the primary factor to be considered in rendering an order of disposition following an adjudication of permanent neglect is the best interests of the children (*see,* Family Ct Act §§ 623, 631; *Matter of Anthony OO.,* 258 AD2d 788, 789). Insofar as such inquiry involves the weighing of testimony and assessment of witness credibility, Family Court's determination is entitled to great deference (*see, Matter of Irene O.,* 38 NY2d 776, 777; *Matter of Bykya Minnie E.,* 212 AD2d 365, *lv dismissed, lv denied* 85 NY2d 964).

Here, conflicting testimony was presented regarding the relationship between Matthew and Christian. While the adoptive mother of Dustin indicated that they do not play together, the parent aide stated that they act like normal brothers and do display affection. Moreover, the clinical psychologist who evaluated the children observed that Matthew and Christian "do seem obviously bonded to one another in ways typical of siblings". She opined that, although Matthew was also bonded to Dustin, it would be in Matthew's and Christian's best interests to be placed for adoption together if it were not possible for all three boys to remain with Dustin's adoptive parents. Furthermore, it is significant that Matthew and Christian have been together since Christian was born. While it is unfortunate that Matthew may be separated from Dustin if he and Christian are adopted by another family, we find no error in Family Court's order requiring that Matthew and Christian be placed together for adoption under the particular circumstances presented herein.

Peters, Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.