◼ In the Matter of MARYBETH C. and Another, Children Alleged to be Permanently Neglected. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Respondent; RICHARD C., Appellant. [716 NYS2d 133] —Graffeo, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered July 9, 1999, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's two children permanently neglected, and terminated respondent's parental rights.

Respondent and his wife are the parents of two daughters, Marybeth (born in 1985) and Joanne (born in 1988). As we previously addressed the facts precipitating the children's removal from their parents' care in an appeal brought by respondent relating to the suspension of visitation with his elder daughter, we refer to our prior decision for a more complete recitation of the history of these proceedings (*Matter of Sullivan County Dept. of Social Servs. v Richard C.*, 260 AD2d 680, *lv dismissed* 93 NY2d 958). Briefly stated, after the investigation of a hotline report of inadequate guardianship led to petitioner's provision of preventive services in the home for a year, the children were removed from their home in May 1995 when one of the girls disclosed that her mother had engaged in sexual abuse.

Each of the children was diagnosed with serious psychological and developmental disabilities which required placement in environments where their special needs could be addressed. Marybeth was diagnosed with posttraumatic stress disorder and a psychotic disorder for which antipsychotic medication was prescribed. When Marybeth was removed from her parents' home, she was unable to engage independently in many common daily activities, such as dressing herself, brushing her teeth and using silverware. Placed in a foster home with assistance to address her special needs, she was taught to walk properly, having acquired a strange gait, and was trained

not to engage in certain sexual conduct in public. Joanne was diagnosed with posttraumatic stress disorder and encopresis, a potentially life-threatening condition characterized by intestinal blockages. She was eventually placed in a residential treatment center.

Neglect and abuse proceedings initiated against respondent's wife resulted in a finding that she neglected the children. Based on evidence that visitation with their mother was not in the children's best interests given their developmental difficulties and serious psychological conditions, such visitation was suspended. The neglect proceeding involving respondent was founded on allegations that he took no action to stop the sexual abuse and failed to properly care for his daughters, including the lack of sanitary living conditions. Although the proceeding was adjourned in contemplation of dismissal, respondent's visitation with Marybeth was also suspended and, in the previous appeal, we rejected respondent's challenge to the denial of his application to reinstate such visitation.

This proceeding was initiated in July 1998 with the filing of permanent neglect petitions seeking the termination of the parental rights of respondent and his wife due to their failure to plan for the children. After fact-finding and dispositional hearings were conducted in December 1998 and June 1999, respectively, the petitions were granted. We are presented with and address only the propriety of the termination of respondent's parental rights.

As this permanent neglect petition was predicated on allegations of respondent's failure to adequately plan for the future of his daughters, petitioner was obligated to prove by clear and convincing evidence that, for at least one year, respondent failed "substantially and continuously or repeatedly to * * * plan for the future of the child[ren], although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]). In assessing whether a permanent neglect finding is warranted, we begin with analysis of the sufficiency of the agency's activities, which, as appropriate to the family's needs and circumstances, may include the provision of counseling and other appropriate services and programs, the facilitation of visitation, and an appraisal of the children's progress and development (*see, Matter of Star Leslie W.*, 63 NY2d 136, 142). In this regard, "[t]he parent also has responsibilities and must take affirmative steps to correct the conditions which led to the child's removal and realistically plan for the child's future financial, physical and emotional support" (*Matter of Matthew YY.*, 274 AD2d 685, 686).

Upon review of the entire record, we concur with Family Court that petitioner engaged in diligent efforts to encourage the parental relationship. Although respondent testified that he was unaware of petitioner's intervention in his home, petitioner established that it had provided preventive services to the family for a period of one year prior to removing the children from their parents' care. Respondent and his wife were invited to service plan meetings and uniform case reports were prepared every six months, with the initial goal being reunification of the family. After it was determined that it would be inappropriate for the foreseeable future to return the children to the custody of respondent's wife, the goal became to encourage respondent to create a separate home for the children. In addition, specific objectives established for respondent involved improving and increasing his interaction with the children, attending counseling and parenting classes to enable him to understand their psychological conditions and to develop empathy for their special needs, and demonstrating an ability to make appropriate decisions involving their care.

Petitioner frequently communicated with respondent and his wife by letter, inviting them to periodic treatment and planning meetings concerning the children, but respondent did not consistently respond to the correspondence and he failed to promptly notify the agency of changes in his address. Petitioner facilitated respondent's visitation with Joanne, driving him to the first scheduled visitation at the residential treatment facility and providing him with written directions so that he could drive himself to his monthly visitation sessions. Respondent was further advised that petitioner could arrange transportation for visitation should it be necessary, but he never requested such assistance.

Despite petitioner's efforts, respondent did not attain the basic goals set by the agency. Although respondent completed a parenting course, he was unable to utilize the skills taught and did not attend a second parenting class when ordered to do so. Respondent's attendance at scheduled visitations with his daughters was infrequent. For example, although monthly visits were planned, he visited Joanne only 6 to 8 times between July 1996 and June 1998. When respondent did attend, the visits were characterized by a lack of interaction with his daughters. Several individuals who supervised the encounters testified that respondent was often late for visits, causing significant anxiety for the children, and, when he did arrive, he chose to socialize with the adults in the room, frequently leaving each of his daughters to play by herself. Following the

visits, the children exhibited signs of regression, suddenly forgetting skills they had mastered since being removed from their parents' home and, in Joanne's case, such visits sometimes led to recurrences of encopresis.

Petitioner also arranged mental health counseling for respondent, but his attendance at planned sessions was sporadic and there was no evidence of any behavioral changes as a result of the therapy. One social worker testified that respondent had not set goals for himself and seemed unwilling to seriously address his family's problems. Indeed, respondent did not consistently acknowledge that the children had been neglected or abused and failed to take responsibility for their conditions, testifying at the fact-finding hearing that they were likely born with their difficulties. Although respondent had previously acknowledged that the children could not be placed in the care of his wife and stated that he was willing to create a separate living arrangement for them, he failed to develop a plan for a future home. Evidencing a lack of understanding of the trauma his children suffered and their special needs, respondent testified at the fact-finding hearing that his wife could take care of the children when he was not at home. Thus, notwithstanding petitioner's efforts, respondent remained unwilling or unable to make use of the rehabilitative services provided to address the underlying problems which led to the removal of the children (see, Matter of Ashley E., 271 AD2d 764, 766).

Under the circumstances, we see no error in Family Court's holding that, despite petitioner's diligent efforts, respondent neglected the children by failing to pursue a realistic plan to care for them such that termination of his parental rights was in their best interests. The record supports the conclusion that, "although respondent appears to genuinely care about [his] children and despite the many services that petitioner has provided [him], [he] is either unable or unwilling to make the meaningful lifestyle changes that are necessary to permit the safe return of [his] children" (Matter of Heather E., 238 AD2d 678, 680).

We reject respondent's contention on appeal that the agency's activities were deficient because he is mentally retarded and, as such, petitioner was obligated to engage in "extraordinary efforts" on his behalf. Respondent did not call any witnesses or otherwise offer any evidence to substantiate his claim of disability. A clinical psychologist who evaluated respondent at petitioner's request indicated that respondent was not mentally ill, that his IQ was average to low average and that a diagnosis of mental retardation would be "unfounded." One of respon-

dent's counselors testified that respondent's mental capacity did not prevent him from parenting. As there was no credible evidence of mental disability beyond the conclusory statements of respondent's attorney, reversal is not warranted due to petitioner's alleged failure to provide special services (*see, Matter of Chuck PP.*, 158 AD2d 859, 861, *lv denied* 75 NY2d 710).

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.