■ In the Matter of MARY MM., a Child Alleged to be Permanently Neglected. BROOME COUNTY DEPARTMENT OF SO-CIAL SERVICES, Respondent; LEUETTA NN., Appellant. [899 NYS2d 483]—

Egan Jr., J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered May 22, 2009, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

In June 2005, respondent voluntarily placed her daughter (born in 1998) with petitioner after it was discovered that respondent allowed a convicted sex offender (her boyfriend) to reside in the home and have access to the child. The child was placed with a foster family where she currently remains. In August 2005, an amended neglect and abuse petition was filed based on allegations that, prior to the child's removal from the home, respondent observed her boyfriend sexually abuse her daughter, yet took no action. After a fact-finding hearing, Family Court found the child to have been neglected by respondent.* After a dispositional hearing, Family Court ordered that respondent be placed under petitioner's supervision and that she access and benefit from a variety of services including, among other things, literacy training and parenting classes. Respondent was also ordered to participate in assessments, counseling and treatment on the basis that she permitted a known sex offender to be around her child.

---

* By decision entered March 1, 2007, we affirmed Family Court's determination that the child was neglected based on the finding that respondent knew her boyfriend was a convicted sex offender, yet permitted him to remain in the home (*Matter of Mary MM.*, 38 AD3d 956 [2007]). In that proceeding, we noted that the child was previously sexually abused by a 13-year-old boy, the child's father was also a convicted sex offender and respondent admitted to dating another man who had been convicted of indecent exposure (*id.*).

In June 2008, petitioner filed this permanent neglect petition pursuant to Social Services Law § 384-b. After a fact-finding hearing, Family Court adjudicated the child to be permanently neglected. Following dispositional and permanency hearings, Family Court ordered that respondent's parental rights be terminated. Respondent now appeals, contending that petitioner failed to sustain its burden of proving that it made diligent efforts to strengthen and encourage the parental relationship, and respondent failed to maintain contact with and failed to prepare for the future of the child. We disagree.

"In order to terminate a parent's rights on the basis of permanent neglect, the petitioner must show by clear and convincing evidence for the relevant one year period either that the parent (1) failed to substantially and continuously maintain contact with the child, or alternatively, (2) failed to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Joseph ZZ.*, 245 AD2d 881, 883 [1997], *lv denied* 91 NY2d 810 [1998]; *see* Social Services Law § 384-b [7] [a]; *Matter of Matthew YY.*, 274 AD2d 685, 686 [2000]). Here, petitioner provided respondent with a caseworker in 2005, who met with respondent and visited respondent's apartment numerous times during the three years prior to the filing of the permanent neglect petition. The caseworker provided respondent with access to mental health and literacy volunteers, arranged for an IQ test, arranged for respondent to attend parenting classes and set up appointments with the Family and Children's Sexual Abuse Project for protective ally counseling. Additionally, the caseworker repeatedly counseled respondent regarding the need for a stable, secure and sanitary residence, the need to keep knives and prescription medications out of her child's reach, to keep doors locked and to contact her landlord about necessary repairs and code enforcement. She also suggested that respondent seek out alternative housing and offered assistance in filling out applications. The caseworker arranged for visitation with the child outside the home due to the unsanitary condition of the home, and provided respondent with a bus pass to facilitate those visits and to enable respondent to attend counseling and therapeutic appointments. Finally, the caseworker purchased gifts for respondent to give to the child. In view of this evidence, we find that petitioner exercised diligent efforts in seeking to reunite respondent with the child (*see* Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]; *Matter of Laelani B.*, 59 AD3d 880, 881 [2009]; *Matter of George M.*, 48 AD3d 926, 927 [2008]).

Likewise, contrary to respondent's argument, the record supports the conclusion that respondent did not adequately plan for the child's future (*see Matter of George M.*, 48 AD3d 926, 927 [2008]; *Matter of James X.*, 37 AD3d 1003, 1006 [2007]). While respondent participated in most services offered, the record reflects little, if any, benefit (*see Matter of Joseph ZZ.*, 245 AD2d at 883). Although respondent was repeatedly counseled regarding the need to keep a safe and sanitary home, the caseworker observed deplorable conditions during home visits; she observed that the apartment was generally filthy with overflowing garbage and spoiled food, which respondent failed to remedy from visit to visit. The caseworker also noted that the bathroom went uncleaned, and human feces was observed in the bathroom sink, over the toilet paper roll and on soiled undergarments and towels that were strewn on the floor. On one occasion, the caseworker observed photographs of respondent without clothes that were left on the coffee table.

Even apart from respondent's repeated failure to remedy the deplorable and unsanitary conditions evidenced in the home, she has continuously failed to be a protective ally for the child. For example, at many home visits the caseworker noted that the apartment door was left open and, on one occasion, observed an unknown individual enter the home through the unlocked door. Respondent failed to protect the child from the aggressive behavior of her older male cousin who resides next door to respondent. This cousin had free access to respondent's apartment and had recently exhibited sexually inappropriate behavior. Even more disturbing, after completing the Protective Allies for Children Education program, respondent attempted to persuade the child to recant allegations of sexual abuse. Thus, we find that respondent has utterly failed in removing the destructive elements that led to the filing of the neglect and abuse petitions in the first place.

We find that respondent's limited intellect "neither exonerated her from planning for her child nor precluded petitioner from seeking to terminate respondent's right to custody for failing to meet her responsibility" (*Matter of Chuck PP.*, 158 AD2d 859, 861 [1990], *lv denied* 75 NY2d 710 [1990]; *see Matter of John ZZ.*, 192 AD2d 761, 762 [1993]). In light of the evidence that the child is thriving with her foster family, who wishes to adopt her, we reject respondent's contention that a suspended judgment, rather than termination of respondent's parental rights, would have been in the best interest of the child (*see Matter of Kayla KK. [Tracy LL.]*, 68 AD3d 1207, 1209 [2009]; *Matter of Laelani B.*, 59 AD3d at 882). Finally, respondent's

remaining contentions have been considered and found to be without merit.

Mercure, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.