Spain, J.
Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered June 29, 2012, which granted petitioner’s applications, in three proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent’s children to be permanently neglected, and terminated respondent’s parental rights.
Respondent is the mother of three children, Jason N, Kyle N. and Cory N., born in 2007, 2008 and 2009, respectively. In August 2009, the two older children were removed and voluntarily placed in foster care after respondent, pregnant with Cory, was found highly intoxicated and threatening to kill herself. Respondent consented to a Family Court finding of neglect as to the two older children and was placed under a one-year order of supervision. After Cory was born in December 2009 and tested positive for cocaine, he was protectively removed. Respondent admitted to prenatal use of cocaine and Family Court adjudicated Cory to be neglected. In August 2011, after the older children had been in foster care for over two years, and Cory for over 18 months since birth, petitioner commenced these proceedings alleging that respondent had permanently neglected all three children, who continued to reside in the same preadoptive foster home. Prior to the fact-finding hearing, the parental rights of the children’s father were terminated. After the fact-finding hearing, Family Court adjudicated the children to be permanently neglected and, following a dispositional hearing, respondent’s parental rights were terminated, freeing them for adoption. Respondent appeals, and we affirm.
We are not persuaded by respondent’s contention that petitioner failed to make diligent efforts to reunite her with her children as required by Social Services Law § 384-b (7) (a) (see Matter of Star Leslie W., 63 NY2d 136, 142 [1984]). The testimony and evidence adduced at the fact-finding hearing convincingly demonstrated that petitioner made “affirmative, repeated and meaningful efforts to restore the parent-child relationship[s]” (Matter of Alycia P., 24 AD3d 1119, 1120 [2005]). Petitioner provided a vast array of services to respondent, including supervised visitation and assistance with the children *1081 during visitation, caseworkers to support the family and oversee services and resources, referrals for substance abuse and mental health evaluations and counseling/treatment, a referral and offer to assist in housing procurement, a referral to drug court and drug treatment, transportation assistance for respondent and transportation of the children to visitations, scheduling assistance, referral for cognitive evaluations, a parenting program, and employment referrals and assistance. Petitioner also arranged for respondent to participate in an intensive aftercare and prevention program (hereinafter LAPP) run by the Northeast Parent and Child Society, an intensive program designed to, among other things, reunite children in foster care with their parents, and offer expansive services and family assistance in navigating resources. Respondent was regularly and repeatedly apprised of the children’s progress and development in foster care, of their special needs and health problems, of the implications of protracted foster care, and of her need to address and correct the problems that led to their removal and to meaningfully plan for their future (see Social Services Law § 384-b [7] [a]; Matter of Isaiah F., 55 AD3d 1004, 1004-1005 [2008]; Matter of George M., 48 AD3d 926, 927 [2008]). The hearing testimony supports Family Court’s determination, and reflects that “petitioner established by clear and convincing evidence that it made ‘diligent efforts to encourage and strengthen the parental relationship’ ” (Matter of Nicole K. [Melissa K.], 85 AD3d 1231, 1232 [2011], quoting Social Services Law § 384-b [7] [a]; see Matter of Summer G. [Amy F.], 93 AD3d 959, 960-961 [2012]).
Likewise, petitioner established that despite its diligent efforts, respondent did not substantially plan for the future of the children in that she failed to “take meaningful steps to correct the conditions that led to the children’s] removal” (Matter of Tatianna K. [Claude U.], 79 AD3d 1184, 1186 [2010]; see Matter of Nathaniel T., 67 NY2d 838, 840 [1986]; Matter of Summer G. [Amy F.], 93 AD3d at 961). “A parent plans for the future by utilizing available medical, social and psychological services as needed and providing a stable and adequate home environment” (Matter of Tatianna K. [Claude U.], 79 AD3d at 1185; see Matter of Gregory B., 74 NY2d 77, 87 [1989]; Matter of Star Leslie W., 63 NY2d at 142-143). Respondent failed over the course of 2V2 years to obtain adequate and stable housing appropriate for a family of four with three young children; as of the February 2012 hearing, she continued to temporarily reside at the YWCA in a small one bedroom apartment, had no plans to obtain a larger, more permanent apartment, and had declined caseworker assistance in pursuing alternate housing. She had been *1082 discharged in the summer of 2011, after only a few months, from the IAPP program for missing numerous appointments and failing to participate, progress or meet most of her treatment goals. While respondent apparently achieved sobriety and substance abuse abstinence by July 2011, almost two years after the older children’s removal, she was discharged — as unsuccessful — from the local drug treatment court program in August 2011. Although respondent completed many of the programs required, made some progress and stayed involved, the testimony fully supports Family Court’s conclusion that “[s]he’s done . . . almost everything that’s been expected [program-wise] yet she’s still not in a position to parent the children” and “has done very little to get them out of custody.”
Respondent’s completion of programs and utilization of required services were not sufficient where, as here, “there was no real change in her ability to care for her child[ren] or to adequately provide for [their] future” (Matter of Joseph ZZ., 245 AD2d 881, 883 [1997], lv denied 91 NY2d 810 [1998]), and the record reflects that, despite over 2V2 years of efforts and assistance, respondent made “[in]sufficient progress for the children to return home safely” (Matter of Nicole K. [Melissa K.], 85 AD3d at 1233). Thus, the record amply supports the conclusion that respondent failed to plan for the children’s future by “tak[ing] such steps as may be necessary to provide an adequate, stable home and parental care for the child[ren]” (Social Services Law § 384-b [7] [c]; see Matter of Star Leslie W., 63 NY2d at 143); as such, permanent neglect was established by clear and convincing evidence (see Social Services Law § 384-b [3] [g] [i]; [4] [d]; [7] [a]).
Finally, according deference to Family Court’s findings and choices among dispositional alternatives, we discern no grounds upon which to disturb the court’s determination to terminate her parental rights and free the children for adoption by their long-term foster parents, based upon the best interests of the children (see Family Ct Act § 631; Matter of Summer G. [Amy F.], 93 AD3d at 962; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137 [2012], lv denied 19 NY3d 801 [2012]). The record did not support the conclusion that it would be in the children’s best interests to give respondent a second chance to demonstrate her ability to be a fit parent by a suspended judgment, particularly given the substantial time they have already spent in foster care and the lack of any appreciable progress by respondent in developing the skills and stability necessary to resume parenting them (see Matter of Isaiah F., 55 AD3d at 1006-1007). The children have bonded with their foster parents, *1083 who have shown the skills and ability to address each of their individual special needs and who are willing and able to adopt all three children and provide a safe and stable home for them.
Peters, EJ., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.