■ In the Matter of JOSHUA E.R. CARDINAL MCCLOSKEY COMMUNITY SERVICES et al., Respondents; YOLAINE R. et al., Appellants. (Proceeding No. 1.) In the Matter of JERANAMOR A.R., JR. CARDINAL MCCLOSKEY COMMUNITY SERVICES et al., Respondents; YOLAINE R. et al., Appellants. (Proceeding No. 2.) In the Matter of ELIJAH J.R. CARDINAL MCCLOSKEY COMMUNITY SERVICES et al., Respondents; YOLAINE R. et al., Appellants. (Proceeding No. 3.) [997 NYS2d 739]—

Appeals from three orders of fact-finding and disposition of the Family Court, Queens County (Margaret P. McGowan, J.) (one as to each child), all entered September 20, 2013. Each order found that the mother and the father had permanently neglected the subject child and terminated their parental rights as to the subject child.

Ordered that the orders are affirmed, without costs or disbursements.

The mother and the father have three children: Jeranamor A.R., Jr., Elijah J.R., and Joshua E.R. Jeranamor was removed from the parents' care in November 2007 at the age of five months following the filing of a neglect petition by the Administration for Children's Services of the City of New York (hereinafter ACS), alleging drug use by the father and mental illness as to the mother. Elijah also was removed within days of his birth in October 2008 and placed with the same foster family as Jeranamor. Joshua was born in March 2010 and was placed with a different foster family within a few days of his birth.

The petitioner agency informed the parents of a service plan for the return of Jeranamor and Elijah, which included taking parenting classes, attending domestic violence training, entering an anger management program, and consistently maintaining visitation with the children. The mother was also instructed to engage in mental health services, which included therapy and

medication. The father was required to enter and complete a drug rehabilitation program. After Joshua was placed in foster care, the mother was further informed that she needed to maintain her mental health treatment, continue visitation in a consistent fashion, and obtain stable housing. The father was instructed to complete all the services recommended with respect to the older children.

In September 2010, the agency filed petitions pursuant to article 6 of the Family Court Act, alleging that Jeranamor and Elijah were permanently neglected pursuant to Social Services Law § 384-b. The agency filed a third petition in December 2011, alleging that Joshua also was permanently neglected due to the parents' failure to plan for his return and to maintain continuous contact with him.

Following the mother's testimony on direct examination during the fact-finding hearing as to the older children, she failed to appear in court on the date of her cross-examination. The Family Court struck her testimony and drew a negative inference from her failure to testify. On the next hearing date, the mother appeared with counsel and moved to vacate her default, asserting that she failed to arrive in a timely fashion on the previous hearing date because her train was delayed. The court denied the request, and found that Jeranamor and Elijah were permanently neglected. Following a second fact-finding hearing, the court also found Joshua to be permanently neglected. After a dispositional hearing with respect to all three petitions, the court found that it was in the children's best interests for the parental rights of the mother and father to be terminated and for the agency to receive custody of the children so that they could eventually be adopted by their respective foster mothers. The parents separately appeal.

The mother contends that the Family Court should have vacated her default, which resulted from her failure to appear for her cross-examination during the first fact-finding hearing. The question of whether to relieve a party of an order entered on default is a matter left to the sound discretion of the court (*see Matter of Morales v Marma*, 88 AD3d 722, 722 [2011]). In a proceeding such as the one at issue here, which is to terminate parental rights pursuant to Social Services Law § 384-b, a parent must show that there was a reasonable excuse for the default and a potentially meritorious defense in order to establish his or her entitlement to vacatur of a default order (*see* CPLR 5015 [a]; *Matter of Orange County Dept. of Social Servs. v Germel Y.*, 101 AD3d 1019, 1020 [2012]; *Matter of Cassidy Sue R.*, 58 AD3d 744 [2009]; *Matter of Francisco R.*, 19 AD3d 502

[2005]; *Matter of Vanessa F.*, 9 AD3d 464 [2004]; *Matter of Daquan Malik B.*, 6 AD3d 428, 429 [2004]). Contrary to the mother's contentions, she failed to provide a reasonable excuse or a potentially meritorious defense. She failed to present detailed information or documentation to substantiate her claim of a delay in transportation. In addition, the mother did not explain her failure to contact her attorney or the court (*see Matter of Christopher James A. [Anne Elizabeth Pierre L.]*, 90 AD3d 515 [2011]; *Matter of Chelsea Antoinette A. [Anna S.]*, 88 AD3d 627 [2011]). The mother also presented no defense at all in support of her application to vacate her default. Accordingly, the Family Court did not err in denying the mother's request to vacate her default.

The Family Court also properly found that both parents had permanently neglected the subject children. A parent has permanently neglected a child when he or she fails for a period of at least one year after the child came into the custody of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child (*see* Social Services Law § 384-b [7] [a]; *Matter of Naomi G.*, 65 AD3d 1344, 1344-1345 [2009]; *Matter of Ray A.*, 30 AD3d 410, 411 [2006]). The threshold consideration in a proceeding to terminate parental rights on the ground of permanent neglect is whether the agency established by clear and convincing evidence that it fulfilled its statutory obligation to exercise diligent efforts to encourage and strengthen the parental relationship (*see Matter of Sheila G.*, 61 NY2d 368, 381, 385 [1984]; *Matter of Hadiyyah J.M. [Fatima D.R.]*, 91 AD3d 874 [2012]; *Matter of Darlene L.*, 38 AD3d 552, 554-555 [2007]). Diligent efforts are reasonable attempts by an authorized agency to assist, develop, and encourage a meaningful relationship between the parent and child, including, inter alia, making referrals for counseling, making suitable arrangements for the parent to visit with the child, providing assistance to the parents to resolve the problems preventing the child's discharge, and advising the parents of the child's progress and development (*see* Social Services Law § 384-b [7] [f]; *Matter of Christopher John B. [Christopher B.]*, 87 AD3d 1133, 1133-1134 [2011]; *Matter of Sykia Monique G.*, 208 AD2d 535, 537 [1994]).

"An agency that has exercised diligent efforts but is faced with an uncooperative parent is deemed to have fulfilled its statutory obligations. . . . At a minimum, parents must take steps to correct the conditions that led to the removal of the child from their home" (*Matter of Zechariah J. [Valrick J.]*, 84 AD3d 1087, 1087-1088 [2011] [citations and internal quotation

marks omitted]). A parent's partial compliance with a service plan is insufficient to preclude a finding of permanent neglect (*see Matter of Hadiyyah J.M. [Fatima D.R.]*, 91 AD3d at 875), as is a parent's failure to gain insight as to the need for services and the reasons for the child's placement in the first instance (*see Matter of Tynell S.*, 43 AD3d 1171, 1173 [2007]).

Here, the credible evidence showed that, contrary to her claims, the mother failed to consistently visit the children and did not comply with her mental health treatment program. Indeed, the mother's behavior in court and her repeated hospitalizations belied her claim that she was taking her medication on a consistent basis. Further, the father admittedly continued to take drugs and did not complete a drug rehabilitation program, which was the main component of mandatory services that he was required to complete as part of the plan to reunite with the children. Additionally, the agency's credible evidence showed that the father's visitation with the children was inconsistent. We see no reason to disturb the Family Court's finding of permanent neglect as to both parents (*see Matter of Hadiyyah J.M. [Fatima D.R.]*, 91 AD3d at 875).

In addition, the Family Court properly determined that the best interests of the children would be served by terminating the parental rights of the mother and the father and freeing the children for adoption by their respective foster mothers (*see* Family Ct Act § 631; *Matter of Anthony L. [Anthony C.]*, 95 AD3d 1330 [2012]). Although siblings should generally be kept together, "the rule is not absolute and may be overcome" by a showing that the best interests of the children are served by separating them (*Matter of Ender M. Z.-P. [Olga Z.]*, 109 AD3d 834, 836 [2013]). In light of the special needs of each child and the parents' inability to recognize or understand the nature of these needs, and in light of the strong bond the children had with their foster mothers, it was appropriate to terminate parental rights even if the result of termination and subsequent adoption would be that the children would live separately (*see Matter of James WW. [Tara XX.]*, 100 AD3d 1276, 1279 [2012]; *Matter of Alyssa M.*, 55 AD3d 505, 506 [2008]; *Matter of Alpacheta C.*, 41 AD3d 285 [2007]; *Matter of Matthew YY.*, 274 AD2d 685, 689 [2000]; *Matter of Bykya Minnie E.*, 212 AD2d 365, 365-366 [1995]; *Matter of Mary Liza J. v Orange County Dept. of Social Servs.*, 198 AD2d 350, 351-352 [1993]).

Finally, contrary to the mother's assertions, a suspended judgment was not warranted. The mother did not ask for entry of a suspended judgment. In any event, each of the children had bonded with their respective foster mothers with whom they

had been living since infancy. The children have known only the foster homes as their homes, and it was not in the children's best interests to suspend judgment and prolong foster care (*see Matter of Isis M. [Deeanna C.]*, 114 AD3d 480, 481 [2014]; *Matter of Angelica W. [Dorothy W.]*, 80 AD3d 772, 773 [2011]).

The mother's and father's remaining contentions are without merit. Mastro, J.P., Roman, Sgroi and Maltese, JJ., concur.