*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 4, 2014                     516715
_____

In the Matter of DESTINY EE.,
    Alleged to be a Permanently
    Neglected Child.

ULSTER COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                        Respondent;

KAREN FF.,
                        Appellant.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of NIGAL FF.,
    Alleged to be a Permanently
    Neglected Child.

ULSTER COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                        Respondent;

KAREN FF.,
                        Appellant.

(Proceeding No. 2.)
_____


Calendar Date:  October 8, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Lynch, JJ.

                        _____


        Ted J. Stein, Woodstock, for appellant.

Heather D. Harp, Ulster County Department of Social Services, Kingston, for respondent.

Marian Cocose, Bearsville, attorney for the children.

Daniel Gartenstein, Kingston, attorney for the child.

_____

Rose, J.

Appeals from two orders of the Family Court of Ulster County (Mizel, J.), entered April 10, 2013 and April 11, 2013, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.

Respondent is the mother of Brandon EE., Nigal FF. and Destiny EE. (born in 1997, 2000 and 2003, respectively). Brandon and Nigal were first determined to be neglected and were placed in petitioner's care in 2001, based on a finding that Nigal's father had sexually abused Brandon. Although respondent regained custody in 2003, in 2007 she consented to findings of neglect and placement of all three children with petitioner after she allowed Nigal to travel out-of-state to spend the summer with his father.[1] Petitioner commenced these proceedings in 2009 alleging that Nigal and Destiny (hereinafter the children) were permanently neglected and seeking to terminate respondent's parental rights.[2] After lengthy fact-finding and dispositional

_____

[1] We affirmed an order extending the placement of the children that changed the permanency goal from "return to parent" to "placement for adoption" (Matter of Destiny EE. [Karen FF.], 82 AD3d 1292 [2011]).

[2] We affirmed the denial of respondent's motion to vacate the 2007 neglect findings and dismiss the petitions for permanent neglect (Matter of Destiny EE. [Karen FF.], 90 AD3d 1437 [2011],

hearings, Family Court granted the petitions.  Respondent appeals, primarily contending that petitioner failed to exercise diligent efforts to reunite her with the children.[3]

As relevant here, in order to establish permanent neglect, petitioner was required to prove, by clear and convincing evidence, that "it made diligent efforts to strengthen the parent-child relationship and that, despite those efforts, the parent has failed to . . . substantially plan for the child[ren]'s future for one year after the agency has been charged with the child[ren]'s care" (Matter of Tatianna K. [Claude U.], 79 AD3d 1184, 1185 [2010]; accord Matter of Summer G. [Amy F.], 93 AD3d 959, 960 [2012]; see Social Services Law § 384-b [7] [a]).  Diligent efforts include, among other things, "creating a service plan that offers appropriate services to the parents to resolve the problems preventing return of the child[ren], making suitable arrangements for visitation and advising the parent of the child[ren]'s progress" (Matter of Tatianna K. [Claude U.], 79 AD3d at 1185).

Here, respondent lost custody of the children as a result of her inability to recognize the danger posed by Nigal's father, and the main impediments to her ability to regain custody were identified as her failure to acknowledge what had occurred to Brandon, her inability to understand and address the children's resulting issues and her lack of suitable housing and employment. Our review of the record reveals ample support for the conclusion that petitioner fulfilled its obligation to engage in diligent efforts to reunite respondent with the children (see Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1283 [2012]; Matter of Neal TT. [Deborah UU.], 97 AD3d 869, 870 [2012]; Matter of Mary MM. [Leuetta NN.], 72 AD3d 1427, 1428 [2010], lv denied 15 NY3d 703 [2010]).  Petitioner regularly advised respondent of the

_____

lv dismissed 19 NY3d 856 [2012]).

[3]  A separate proceeding was brought with respect to Brandon.  Although he was determined to be permanently neglected, a suspended judgment was entered on consent and he was returned to respondent's custody.  That disposition is not before us.

necessary steps to have the children returned to her via weekly in-person counseling, monthly letters updating her on the children's progress and interactive service plan review meetings. Respondent's caseworkers provided referrals to appropriate service providers, including mental health services and housing and employment agencies that were capable of meeting respondent's specific needs. Petitioner also facilitated meaningful visitation by scheduling and supervising 150 visits with the children. Further, respondent was provided with advice on how to plan for the visits, was counseled during the visits and received tips following visits for making them more effective. Although there were, at times, a lack of coordination and inconsistent communication from petitioner and its service provider, particularly with respect to whether respondent's out-of-state aunt was an appropriate placement option for the children, Family Court appropriately attributed these isolated incidents to the length of time that the children had spent in petitioner's care, the myriad issues that needed to be addressed and the turnover that occurred in personnel working with petitioner to achieve the stated goals. Respondent's failure to follow through on the recommended services and to consistently address the issues preventing the return of the children does not reflect a lack of diligent efforts (see Matter of Kayden E. [Luis E.], 111 AD3d 1094, 1097 [2013], lv denied 22 NY3d 862 [2014]; Matter of Neal TT. [Deborah UU.], 97 AD3d at 870-871; Matter of Telsa Z. [Denise Z.], 90 AD3d 1193, 1195 [2011], lv denied 18 NY3d 806 [2012]).

The record also supports Family Court's conclusion that respondent failed to adequately plan for the children's future. Although respondent regularly exercised her visitation, underwent some counseling and took some parenting classes, she otherwise failed to pursue the services offered to her. Respondent remained inconsistent in her recognition of the abuse perpetrated against Brandon, made minimal effort in seeking a job, did not enroll in recommended therapy programs and, based on her inability to adequately address the children's issues, was unable to progress beyond supervised visits with them. Accordingly, the record establishes that she made little or no progress in addressing the issues that prevented the children's return (see Matter of Alister UU. [Angela VV.], 117 AD3d 1137, 1138-1139 [2014]; Matter of Ronnie P. [Danielle Q.], 77 AD3d 1094, 1096-

1097 [2010]; Matter of Maelee N., 48 AD3d 929, 930 [2008], lv denied 10 NY3d 709 [2008]).  Inasmuch as the children have made considerable improvement in foster care and have bonded with their foster family, who have expressed a desire to adopt the children, there is a sound and substantial basis in the record supporting Family Court's determination that termination of respondent's parental rights was in the children's best interests (see Matter of Neal TT. [Deborah UU.], 97 AD3d at 871-872; Matter of Summer G. [Amy F.], 93 AD3d at 962; Matter of Mary MM. [Leuetta NN.], 72 AD3d at 1429).

Peters, P.J., Lahtinen, Garry and Lynch, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court